**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES-GENERAL**

Case No.: <u>CV 19-7335-DSF (PLAx)</u>                                          Date: <u>April 1, 2020</u>

Title:   <u>Maria Luz Zucchella v. Olympusat, Inc., et al., and Related Counter-Claims</u>

---

**PRESENT: THE HONORABLE   <u>PAUL L. ABRAMS</u>**
                                            **UNITED STATES MAGISTRATE JUDGE**

<u>   Christianna Howard   </u>              <u>      N/A      </u>                  <u>      N/A      </u>
         Deputy Clerk                      Court Reporter / Recorder                Tape No.

**ATTORNEYS PRESENT FOR PLAINTIFF(S):**                    **ATTORNEYS PRESENT FOR DEFENDANT(S):**
                 NONE                                                                  NONE

**PROCEEDINGS: (IN CHAMBERS)**   <u>Plaintiff's Motion for an Order Quashing Defendants' Subpoenas for Bank Records and/or Protective Order (ECF No. 70)</u>

On March 17, 2020, plaintiff and defendants Olympusat, Inc., and Tom Mohler, Olympusat's CEO, filed a Joint Stipulation ("JS") addressing plaintiff's Motion for an order quashing defendants' subpoenas seeking six years of financial records of bank accounts controlled by plaintiff and the company plaintiff owns, Perro Blanco Films, LLC.  Alternatively, plaintiff seeks a protective order limiting the scope of the subpoenas.  (ECF No. 71).  On March 25, 2020, plaintiff filed a supplemental memorandum.  (ECF No. 79).  The Court previously ordered the hearing scheduled for April 8, 2020, off calendar due to the ongoing Coronavirus pandemic.  (ECF No. 72).

As noted in the Court's February 27, 2020, Order regarding plaintiff's earlier motion to compel discovery (ECF Nos. 41, 47), plaintiff in this action asserts she was subjected to sexual harassment and retaliation while she worked for Olympusat.  (ECF No. 47 at 1).  Defendants counter that plaintiff brought false claims of sexual harassment against them to avoid prosecution for taking kickbacks, knowingly making false statements to give credibility to her company (Perro Blanco Films, LLC), and submitting false receipts to obtain expense reimbursements to which she was not entitled.  (<u>Id.</u>).

**Discovery in Dispute**

On February 7, 2020, defendants served identical subpoenas on Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank, USA, N.A. ("HSBC Bank").  The subpoenas seek eight categories of documents, listed as Requests Nos. 1 through 8.  For purposes of this Motion, defendants have agreed to narrow the scope of the subpoenas to Requests Nos. 1, 3, 5, and 7.  (<u>See</u> Declaration of Theresa Zhen ("Zhen Decl."), ¶ 5, Exhibits 4, 5; Declaration of Laura Reathaford ("Reathaford Decl."), ¶ 4).

Request No. 1 seeks "[a]ll statements covering periods from April 1, 2014, to the present for all bank accounts controlled by [plaintiff], whether individually or jointly, during that time period."  (Zhen Decl., Exhibits 4, 5).

Request No. 3 seeks "[a]ll statements covering periods from April 1, 2014, to the present for all brokerage and financial accounts controlled by [plaintiff], whether individually or jointly, during that time period."  (<u>Id.</u>).

Request No. 5 seeks "[a]ll statements covering periods from April 1, 2014, to the present for all bank accounts controlled by Perro Blanco Farms, LLC, whether solely or jointly, during that time period."  (Id.).[1]

Request No. 7 seeks "[a]ll statements covering periods from April 1, 2014, to the present for all brokerage and financial accounts controlled by Perro Blanco Farms, LLC, whether solely or jointly, during that time period." (Id.).

Plaintiff raises numerous objections, including that the subpoenas are compound, vague, ambiguous, overbroad as to scope and time, and unduly burdensome.  Plaintiff further objects that the subpoenas seek information that is not relevant and not proportional to the needs of the case, and seek information protected by plaintiff's and third parties' right of privacy "under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts."  (JS at 16).

**The Parties' Positions**

In the instant Motion, plaintiff asserts that she has standing to seek to quash the subpoenas because she is claiming a personal right and privilege as to the subpoenaed bank records. (JS at 16-17). She further asserts that, because this action is a diversity case involving claims arising under California law, the targeted bank accounts -- some of which she shares with her husband -- are protected by California's constitutional right of privacy.  (Id. at 17-20).

Plaintiff also argues that the subpoenas are improper because they seek irrelevant documents that are not proportional to the needs of the case.  She points out that while defendants have accused her of receiving kickbacks, defendants have only mentioned a single incident to support this accusation -- an allegation by Mr. Joel Nunez that he paid plaintiff a kickback of $10,000 in November 2017.[2]  Given this allegation of a single illicit payment in 2017, plaintiff maintains that bank records for the entire six-year period of 2014 to the present are not relevant to this action. Rather, plaintiff accuses defendants of engaging in an impermissible fishing expedition, as defendants' speculative belief that other kickback payments occurred during this six-year span is insufficient to justify this privacy invasion. (JS at 21-24).

In the alternative, plaintiff seeks a protective order along the lines of either of two proposals she offers.  The first proposal involves three steps:  (1) defendants ask Mr. Nunez and anyone else accusing plaintiff of kickbacks and/or other misdeeds for documentary evidence to corroborate their accusations; (2) if and when defendants obtain the foregoing evidence, defendants should then ask plaintiff to admit the allegations of wrongdoing by way of requests for admission, interrogatories or at a deposition; and (3) if plaintiff denies the alleged wrongdoing, at that point Wells Fargo and HSBC Bank should be required to produce, pursuant to a protective order, the corresponding bank statements that are redacted to only show the entries pertaining to the alleged wrongdoing. (JS at 6-7).

---

[1]  Plaintiff explains in the JS that while the subpoenas requested records for "Perro Blanco Farms, LLC," she "understands Defendants' subpoenas to be requesting records for Perro Blanco Films, LLC." (ECF No. 71 at 19 n.2).

[2]  Defendants attached the declaration of Mr. Nunez as an exhibit to the Answer.  In his declaration, Mr. Nunez states the following:  since 2006 he has been an Executive Producer at DMM Films; in or around May 2017 plaintiff told Mr. Nunez during a telephone call that if he wanted to work on an Olympusat project -- a scripted series with multiple episodes titled "Hacienda del Rey" -- he would have to pay plaintiff $10,000 per episode "as a kickback to her personally"; plaintiff told Mr. Nunez if he did not pay the kickbacks to her, she would block him from working on any Olympusat project; and that, in or around November 2017, he paid plaintiff a kickback in the amount of $10,000 for the first episode of the project. (See Zhen Decl., Exhibit 2 at #3083-84).

Under plaintiff's second proposal, defendants would prepare and send to plaintiff a list of vendors, licensors, suppliers or customers of Olympusat that defendants reasonably believe may have paid kickbacks to plaintiff. After meeting and conferring on the list, the parties would then send the list to Wells Fargo and HSBC Bank with instructions to review the bank statements covered by Requests Nos. 1, 3, 5, and 7 for any entries referring to the individuals or entities on the list. If any such entries exist, the documents would be produced to both parties in redacted form and pursuant to a protective order. Plaintiff explains that this procedure would also apply to defendants' other allegations of wrongdoing against plaintiff, such as improperly earning money for Perro Blanco Films based on her association with defendants.[3] (JS at 7, 26-27).

Defendants, on the other hand, assert they are entitled to the primary documentation of the relevant financial transactions that relate to their affirmative defenses and counterclaims in this action. In particular, defendants raise the affirmative defenses that plaintiff's claims are barred and/or reduced under the doctrine of after-acquired evidence, and that plaintiff's employment ended regardless of whether or not she had made complaints against or sued defendants. Defendants' counterclaims allege financial wrongdoing by plaintiff and her corporation, Perro Blanco Films, LLC, including that plaintiff violated her employment contract by receiving kickbacks from counter-parties who did business with Olympusat. (JS at 8). Defendants also allege in a counterclaim that plaintiff generated revenue for Perro Blanco Films, LLC, by falsely representing to the public that defendant Mohler and another Olympusat employee were employees of Perro Blanco Films, LLC, and thus "deceptively and unlawfully traded on defendants' goodwill." (JS at 9).

Defendants argue that California's constitutional right of privacy involving bank records is not a privilege, and in any event, the protection is limited and subject to a litigant's need for evidence. As for the bank records of businesses, defendants assert that California law offers no protection, and thus the issue of producing bank records for Perro Blanco Films' accounts is governed by, at most, a relaxed balancing-of-interests approach. (JS at 27-28). Defendants describe the information sought by the subpoenas as limited, relevant, and proportional to the needs of the case, as some or all of plaintiff's employment claims would fail if defendants were able to prove they had legitimate, non-discriminatory reasons for firing her and for taking other employment actions. In particular, documents reflecting kickbacks or reflecting that plaintiff received money as a result of unlawfully trading on Olympusat's goodwill would constitute after-acquired evidence justifying plaintiff's termination. (JS at 29).

Defendants deny plaintiff's accusation that the subpoenas are part of a fishing expedition, and contend that the declaration by a single witness involving an alleged kickback to plaintiff "is more than sufficient" to entitle defendants to discovery that "might help them to identify additional, similar transactions." (JS at 30). In arguing that plaintiff's Motion should be denied, defendants assert that, not only do the subpoenas seek records that are "potentially relevant" to certain affirmative defenses and counterclaims, the subpoenas are also limited in time to the period beginning when plaintiff's employment began, and compliance will not be burdensome for Wells Fargo and/or HSBC Bank. (JS at 30-31). Lastly, defendants point out that the Court has already issued a Protective Order in this case that addresses any "legitimate concerns" by ensuring that bank records may be designated as confidential, that documents so designated may be used for absolutely no purpose other than the prosecution or defense of this lawsuit, and that such documents will be returned or destroyed at the conclusion of the lawsuit. (JS at 10, 31).

## Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

---

[3] During the meet-and-confer process, defendants rejected both of these proposals. (JS at 25-27).

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.  Discovery need not be admissible in evidence to be discoverable. Id.  However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on," any party's claim or defense. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)); Kennicott v. Sandia Corp., 327 F.R.D. 454, 469 (D. N.M. 2018) (definition of relevance set forth in Oppenheimer Fund still applies after 2015 amendment to Rule 26).

Under Rule 45, a party to an action may seek discovery from a third party through a subpoena.  The scope of discovery allowed under a Rule 45 subpoena is the same as the scope of discovery allowed under Rule 26. Miller v. Ghirardelli Chocolate Co., 2013 WL 6774072, at *2 (N.D. Cal. Dec. 20, 2013).  Additionally, Rule 45 provides that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

**Analysis**

Although the subpoenas were served upon third party banks, plaintiff is claiming a privacy interest in the bank records that are being sought.  The Court agrees with plaintiff that she has standing to bring this Motion. See Littlefield v. NutriBullet, L.L.C., 2018 WL 5264148, at *4 (C.D. Cal. Jan. 22, 2018) ("Personal rights claimed with respect to bank account records give a party sufficient standing to challenge a third party subpoena served upon financial institutions holding such information.") (citation omitted).

The Court has considered the scope of the subpoenas along with the claims and defenses at issue in this case, and finds that the subpoena requests seeking six years of financial records are overly broad, as they would, in all likelihood, result in the production of a tremendous amount of financial records that have no bearing on defendants' affirmative defenses and counterclaims.  It appears that defendants hinge their subpoena requests on one alleged incident -- a payment of $10,000 made by Mr. Nunez to plaintiff during November 2017.  Given this single allegation of wrongdoing, defendants have failed to demonstrate a need for such a vast span of sensitive financial information.  Indeed, defendants in the Joint Stipulation admit that the bulk of the requested documents are only "potentially relevant" as the bank records "might" help them identify other incidents of financial wrongdoing.  With apparently no other specific information indicating that plaintiff received additional kickbacks, or "received money [for Perro Blanco Films, LLC] as a result of unlawfully trading on Olympusat's goodwill,"[4] it appears that defendants intend to sift through six years of bank statements with the hope of finding some evidence that supports their counterclaims and affirmative defenses.  The Court, however, will not permit what amounts to a fishing expedition into private financial documents that have little to no apparent probative value. See Rivera v. NIBCO, 364 F.3d 1057, 1072 (9th Cir. 2004) (noting that district courts "need not condone the use of discovery to engage in fishing expeditions").

---

[4] Defendants have not explained with any specificity how the requested account statements could support their counterclaim that plaintiff received money for Perro Blanco Films, LLC, as a result of falsely representing to the public that defendant Mohler and another Olympusat employee were employees of Perro Blanco Films, LLC.  In particular, defendants did not identify any individuals or entities they believe gave plaintiff money after being misled in this alleged manner.

Nevertheless, based on Mr. Nunez's declaration, the Court finds that account statements from the targeted accounts reflecting the alleged November 2017 kickback involving plaintiff and Mr. Nunez would be discoverable as such records would be relevant to defendants' counterclaims and affirmative defenses and proportional to the needs of the case. Accordingly, to ensure that any documents relevant to the alleged 2017 kickback are produced, the Court determines that the subpoenas must be narrowed as follows with respect to Requests Nos. 1, 3, 5, and 7 (production of documents pursuant to Requests Nos. 2, 4, 6, and 8 is **denied**): (1) the time period for the documents to be produced shall be restricted to account activity dating from October 1, 2017, through January 31, 2018; (2) the requests shall be limited to account statements that show entries reflecting (a) *any* deposit in the amount of $10,000, and/or (b) any transaction that references Mr. Nunez; and (3) Wells Fargo and HSBC Bank shall produce any responsive account statements in redacted form so that only the relevant entries are shown (i.e., entries showing deposits of $10,000, and/or transactions referencing Mr. Nunez).

In limiting the subpoenas as stated above, the Court has taken into account plaintiff's privacy arguments. The Court finds, however, that defendants' discovery needs regarding the alleged November 2017 kickback outweigh such concerns, and that the Protective Order entered in this action -- which specifically contemplates the production of "banking information . . . requir[ing] special protection from public disclosure and from use for any purpose other than prosecution of this action" (ECF No. 61 at 6) -- strikes the appropriate balance between the need for the information and any privacy concerns. See Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests," and the "[r]esolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted."). The Court also rejects plaintiff's proposals for the parties to engage in a multi-step process to narrow the scope of the subpoenas. Although the Court agrees that the subpoenas are overbroad, there is no need for plaintiff to exert control over discovery that defendants intend to seek. As discovery in this matter continues, and in the event defendants obtain information as to other alleged kickbacks or incidents of financial wrongdoing involving plaintiff, defendants may issue additional subpoenas that are properly tailored to seek relevant documents. The Court notes that the discovery cut-off in this matter is not until January 5, 2021. (See ECF No. 76).

Accordingly, the Court **grants in part** plaintiff's Motion as set forth above. **No later than April 15, 2020**, plaintiff shall inform Wells Fargo and HSBC Bank that this Court has granted in part plaintiff's Motion for an Order Quashing Defendants' Subpoenas for Bank Records sought by the Rule 45 subpoenas and has narrowed the scope of documents to be produced, and provide Wells Fargo and HSBC Bank with a copy of this Order.

IT IS SO ORDERED.


cc:     Counsel of Record




Initials of Deputy Clerk     ch