Dan Stormer, Esq. [S.B. #101967]
Barbara Enloe Hadsell, Esq. [S.B. #086021]
Brian Olney, Esq. [S.B. #298089]
Tanya Sukhija-Cohen, Esq. [S.B. #295589]
Hanna Chandoo, Esq. [S.B. #306973]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
T: (626) 585-9600 / F: (626) 577-7079
Emails: dstormer@hadsellstormer.com
bhadsell@hadsellstormer.com
bolney@hadsellstormer.com
tanya@hadsellstormer.com
hchandoo@hadsellstormer.com

Lindsey Wagner, Esq. (CBN 309808)
lwagner@scottwagnerlaw.com
Scott Wagner and Associates, P.A.
674 County Square Dr., Ste. #305
Ventura, CA 93003
Telephone: (561) 653-0008

Attorneys for Plaintiff
MARIA LUZ ZUCCHELLA

[Additional Counsel Cont. on next page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MARIA LUZ ZUCCHELLA, an individual,

Plaintiff,

v.

OLYMPUSAT, INC., a Florida corporation; TOM MOHLER, an individual, OLYMPUSAT HOLDINGS, INC., a Florida corporation, OCEAN NEW MEDIA, LLC, a Florida corporation, and OCEAN COMMUNICATIONS, INC., a Florida corporation, and DOES 4 through 50, inclusive,

Defendants.

OLYMPUSAT, INC., a Florida corporation; and TOM MOHLER,

Counter-Claimants,

v.

MARIA LUZ ZUCCHELLA, an individual,

Counter-Defendant.

Case No.: 2:19-CV-7335 DSF (PLAx)

[Assigned to the Honorable Dale S. Fischer Courtroom 7D]

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF DEFENDANTS' RETAINED EXPERT AMYANNE FREEBURG, PSY.D., PURSUANT TO *DAUBERT v. MERREL DOW PHARMS INC.***

Date: September 19, 2022
Time: 3:00 p.m.
Crtrm: 7D

Complaint Filed: July 15, 2019
Counterclaims Filed: October 25, 2019
Trial: October 11, 2022

[Additional Counsel Cont. from previous page]

Robert Newman, Esq. [S.B. #86534]
ROBERT D. NEWMAN, ATTORNEY AT LAW
3701 Wilshire Boulevard, Suite 208
Los Angeles, California 90010
Telephone: (213) 487-4727
Facsimile: (213) 487-0242

Attorneys for Plaintiff
MARIA LUZ ZUCCHELLA

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2022, at 3:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 7D of the United States District Court, Central District, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Plaintiff Maria Luz Zucchella will and hereby does move for a Court Order excluding and/or limiting the expert opinions and testimony of Defendants' retained expert Amyanne Freeburg, Psy.D.

This motion is based on the Federal Rules of Civil Procedure, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the instant Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Plaintiff's counsel, the pleadings, and on whatever other additional evidence is adduced at the hearing on the motion.

This motion follows a conference of counsel pursuant to Local Rule 7-3. Chandoo Decl. ¶ 2.

Dated: August 22, 2022

Respectfully Submitted,
SCOTT WAGNER AND ASSOCIATES
ROBERT D. NEWMAN, ATTORNEY AT LAW
HADSELL STORMER RENICK & DAI LLP

By: /s/ Hanna Chandoo
Dan Stormer
Barbara Enloe Hadsell
Brian Olney
Tanya Sukhija-Cohen
Hanna Chandoo
Attorneys for Plaintiff
MARIA L. ZUCCHELLA

# TABLE OF CONTENTS

**Page(s)**


TABLE OF AUTHORITIES ....................ii

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

A. Ms. Zucchella Was Repeatedly Sexually Harassed and Suffered a Profoundly Hostile Work Environment throughout Her Employment....................2

B. The Parties' Experts....................5

III. ARGUMENT ....................5

A. Dr. Freeburg's Opinions Fails to Meet the Two-Step *Daubert* Test ....................6

1. Dr. Freeburg Did Not Comply with Mandatory Standards Set Forth by the American Psychological Association ....................6

2. Dr. Freeburg Did Not Comply with Additional Guidelines Set Forth by the American Psychological Association ....................10

B. Dr. Freeburg's Opinions Do Not Cite to Any Research or Methodology ....................11

C. Dr. Freeburg Impermissibly Opines on Facts....................12

IV. CONCLUSION ....................14

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Coleman v. Wilson*
912 F. Supp. 1282 (E.D. Cal. 1995) .......... 9

*Cooper v. Brown*
510 F. 3d 870 (9th Cir. 2007) .......... 6

*Daubert v. Merrell Dow Pharms.*
43 F. 3d 1311 (9th Cir. 1995) .......... 11

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993) .......... *passim*

*Foshee v. Zuniga*
No. 20-cv-00132-VKD, 2021 U.S. Dist. LEXIS 92474 (N.D. Cal. May 14, 2021) .......... 12, 13

*Hall v. Baxter Healthcare Corp.*
947 F. Supp (1996) .......... 6

*Lewert v. Boiron, Inc.*
212 F. Supp. 3d 917 (C.D. Cal. 2016) .......... 11

*Lust By & Through Lust v. Merrell Dow Pharms.*
89 F. 3d 594 (9th Cir. 1996) .......... 5

*Norsworthy v. Beard*
87 F. Supp. 3d 1164 (N.D. Cal. 2015) .......... 9

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*
No. 16-cv-01393-JST, 2018 U.S. Dist. LEXIS 208884 (N.D. Cal. Dec. 11, 2018) .......... 13

*Penny v. State Farm Mutual Automobile Insurance Company*
474 F. Supp. 3d 1176 (2020) .......... 9

*Pooshs v. Philip Morris USA, Inc.*
904 F. Supp. 2d 1009 (N.D. Cal. 2012) .......... 6

/ / /

*Reed v. Lieurance*
281 F. Supp. 3d 1058 (D. Mont. 2017) .......... 13

*SEC v. Daifotis*
No. C 11-00137 WHA, 2012 U.S. Dist. LEXIS 79332 (N.D. Cal. June 7, 2012) .......... 12

*Southland Sod Farms v. Stover Seed Co.*
108 F.3d 1134 (9th Cir. 1997) .......... 11

*U.S. v. Duhon*
104 F. Supp. 2d 663 (W.D. LA 2000) .......... 9

*U.S. v. Finley*
301 F. 3d 1000 (9th Cir. 2002) .......... 6, 8

*U.S. v. Rincon*
28 F. 3d 921 (9th Cir. 1994) .......... 11

*U.S. v. Saya*
961 F. Supp. 1395 (D. Haw. 1996) .......... 9

**FEDERAL STATUTES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 26 .......... 5

Federal Rules of Evidence
Rule 702 .......... 2, 5, 6

**OTHER AUTHORITIES**

American Psychiatric Association's *Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry* .......... 1, 7

American Psychological Association. *Ethical Principles of Psychologists and Code of Conduct* .......... 1, 6

American Psychological Associations *Guidelines for Psychological Assessment and Evaluation* .......... 10

# I. INTRODUCTION

Defendants have designated Amyanne Freeburg as an expert psychologist "to provide analysis of the report put forth by [Plaintiff's retained expert,] Dr. Anthony Reading on August 16, 2021." Chandoo Decl., Ex. 1. Dr. Freeburg has failed to meet basic, foundational standards articulated by the American Psychological Association. *Ethical Principles of Psychologists and Code of Conduct* ("*Ethical Principles of Psychologists*"), which sets forth a mandatory code for all members of the American Psychological Association requires psychologists to "provide opinions of the psychological characteristics of individuals *only after they have conducted an examination of the individuals* adequate to support their statements or conclusions." Chandoo Decl., Ex. 2 at 29 (emphasis added). Personal examination is a basic tenet of psychological evaluation and practice, so fundamental that it is an industry standard that psychologists *and* psychiatrists share. Section 7.3 of the American Psychiatric Association's *Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry* ("*Principles of Medical Ethics*"), states the "Goldwater Rule," which provides, "[I]t is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement." Chandoo Decl., Ex.3 at 9.

Dr. Freeburg has never met Ms. Zucchella, let alone examined her. Defendants never even requested that their expert be allowed to examine Ms. Zucchella. Despite this, Dr. Freeburg's report is full of representations regarding Ms. Zucchella's symptoms and behavior. For example, Dr. Freeburg writes, "Overall, while [Ms. Zucchella] has some mild symptoms at times – tearfulness and difficulty with dates, there is no indicated of 'marked' symptoms in his report, based on her account, psychological testing, or clinical behavioral observations." Chandoo Decl., Ex. 1 at 9; *see also* Chandoo Decl., Ex. 1 at 14 ("There is no indication she would not have continued working for Olympusat, but for her termination."); Chandoo Decl., Ex. 1 at 9 ("While the ideas of persecution on the paranoid scale (RC6=75T) is elevated, this is more indicative of a situationally based elevation

given the lawsuit allegation she has and that of the countersuit."). Dr. Freeburg makes all of these statements without personally evaluating Ms. Zucchella.

Dr. Freeburg admits that best practices and, indeed, *her own practices* require a personal examination. During her deposition, Dr. Freeburg testified that, in all but five of the approximately 30 times she has been retained as a neutral, she has "examine[d] the person whose mental health was at issue," which included "some type of interview" and the "administration of [] psychological tests." Deposition of Amyanne Freeburg, Ph.D. ("Ex. 4") at 10:14-23. In the five instances when Dr. Freeburg did not conduct a personal examination, the examinee "wasn't actually alive" or "ha[d] a severe illness of sorts" that required "an ADA accommodation," such as "they can't operate use their hands or they might be blind." *Id.* at 11:13-12:8. She further testified, "I've never rendered an opinion on diagnosis of a person that I did not actually interview," and that it is "often [in] criminal cases where you don't have an opportunity to do psychological testing." *Id.* at 42:25-43:6, 41:13-42:8. Dr. Freeburg admitted that psychological testing is "helpful to understand now what [an individual's] trajectory was in the past." *Id.* at 42:9-20.

By rendering opinions about Ms. Zucchella without personally examining her, Dr. Freeburg has clearly violated the ethical rules and mandates of her very profession and her own usual and standard practices. This renders her testimony inherently unreliable and warrants its exclusion, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## II. FACTUAL BACKGROUND

### A. Ms. Zucchella Was Repeatedly Sexually Harassed and Suffered a Profoundly Hostile Work Environment throughout Her Employment.

From 2000 until her wrongful termination in 2019, Maria Luz Zucchella worked for Defendant Olympusat, Inc. and its owner and CEO, Defendant Thomas Mohler.[1] ECF No. 34 ("FAC") ¶¶ 5, 30-32, 59; ECF No. 319-2, Defs.' Uncontroverted Facts &

[1] Plaintiff provides this factual background for context. Because the Court is familiar with the factual background in this case, Plaintiff is not refiling the evidence supporting the statement of facts in this motion.

Supporting Evid. ("DUMF") ¶ 9; ECF No. 327-1, Pl.'s Add'l Material Facts ("AF") ¶¶ 233, 587. Throughout Ms. Zucchella's tenure at Olympusat, Mohler used his authority as CEO to manipulate female employees and consultants into sexual relationships. *See* FAC ¶¶ 27-28, 45; AF ¶¶ 244-439, 566-612. For years, Ms. Zucchella was forced to endure Mr. Mohler's incessant sexual comments and advances, including repeated false statements that he had fathered her son, public proposals that she engage in a three-some with him and his current girlfriend, pressure to attend events known to be sexually charged, unwanted touching, and the like. *See* FAC ¶¶ 27-28, 45; AF ¶¶ 244-439, 566-612. He routinely engaged in unwanted sexual advances towards multiple female employees, discussed his sexual encounters with Olympusat employees, including Ms. Zucchella, made repeated unwanted sexual "jokes" and comments, touched female employees' breasts and buttocks without their consent, and kissed them without consent. *See* FAC ¶¶ 27-28, 45; AF ¶¶ 244-439, 566-612. Much of this conduct was directed toward Ms. Zucchella or occurred in her presence.

Defendants were on notice of Mr. Mohler's graphic and grotesque harassment, which he conducted openly, and notoriously for years against multiple female employees. Prior to her termination on October 11, 2019, Ms. Zucchella repeatedly complained to Mr. Mohler himself about his sexually offensive behavior and to highly placed managers at Olympusat in the hopes that this might abate Mr. Mohler's harassment. AF ¶¶ 440-469, 481-565. In 2016, for example, Ms. Zucchella complained to Ray Allieri, the Chief Operating Officer for Olympusat, about Mr. Mohler's offensive behavior hoping that he would intervene and stop Mr. Mohler's sexual pursuits towards her and her coworkers. She also complained to Arturo Chavez, one of her supervisors. In April 2019, Plaintiff made a written complaint to Olympusat's in-house counsel and Executive Vice President Colleen Glynn about Mr. Mohler's harassment.

Plaintiff was not the only complainant about sexual harassment at Olympusat. Former COO Kimberly Reed, former employees Grace Gonzalez, Alexandria Aguilar, and Carly Capko, and former Olympusat consultant Dina Almeida have all alleged that Tom

Mohler's behavior created a hostile work environment and have detailed Mr. Mohler's shameless verbal and sexual misconduct in letters sent by their counsel to Olympusat, charges filed with the DFEH and EEOC, and/or lawsuits filed in state and federal courts. AF ¶¶ 481-565. When they sought to escape from his clutches or refused his advances, he threatened to terminate their employment and consulting agreements and bring meritless legal action based on false claims of criminal activities. FAC ¶¶ 27-28, 45; AF ¶¶ 244-439, 566-612.

In February 2019, Mohler contacted Ms. Zucchella repeatedly to pressure her into making a false statement attesting that she had never seen him sexually harass any Olympusat employee or contractor. AF ¶¶ 503, 505, 507, 509-510. Ms. Zucchella refused and Mohler responded by falsely accusing Plaintiff of conspiring with another woman who had accused Mohler of sexual harassment, accepting kickbacks, and theft. AF ¶¶ 504, 509, 515. He began a campaign of harassment and retaliation against Ms. Zucchella, revising her job assignments, forbidding her from acquiring content in territories to which she had been assigned for years, and threatening to terminate her employment. AF ¶¶ 580, 581.

On July 15, 2019, Ms. Zucchella filed this lawsuit. *See generally* FAC. Defendants responded by intensifying their retaliation. *See* FAC ¶¶ 57-59; Chandoo Decl., Ex. 1 at 94:8-95:24, 99:4-19, 139:23-140:5, ECF No. 291-2; Zucchella Decl. ¶¶ 81-87, ECF No. 262-1. On October 11, 2019, the Court denied Defendants' motion to dismiss Plaintiff's complaint. ECF No. 26. Within hours, Defendants terminated Ms. Zucchella's employment. ECF No. 262-19 at 1; ECF No. 262-1 ¶ 87. On October 25, 2019, Defendants filed baseless counterclaims against Ms. Zucchella, accusing her of fraud, theft, and other criminal, lawful and unprofessional conduct. ECF No. 27.

Olympusat, Inc. and Tom Mohler's behavior has had and continues to have a profound impact on Ms. Zucchella's emotional and mental health.

/ / /

/ / /

**B. The Parties' Experts**

Plaintiff has retained psychological expert Dr. Anthony Reading, who conducted a psychological evaluation of Ms. Zucchella on August 20, 2021. Dr. Reading prepared a Rule 26 report describing his findings, which was disclosed to Defendants on September 6, 2021. Chandoo Decl., Exs. 5, 6.

Defendants retained Dr. Amyanne Freeburg to rebut Dr. Reading's report. Chandoo Decl., Exs. 7, 1. Dr. Freeburg has never met, let alone examined, Ms. Zucchella. Chandoo Decl., Ex. 4 at 23:19-21. She "never administered any type of the mental status tests to the Plaintiff in this case" and, indeed, was "never asked to conduct a mental health examination or evaluation" of Ms. Zucchella or "to administer any kind of a mental health testing to the Plaintiff in this case." Chandoo Decl., Ex. 4 at 23:9-25.

## III. ARGUMENT

Federal Rule of Evidence 702 is the "primary locus" for evaluation of the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert scientific opinion is admissible if it qualifies as "scientific knowledge" and is therefore sufficiently "reliable." *Id.*; *see also Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F. 3d 594, 597 (9th Cir. 1996). The adjective "scientific" implies a "grounding in the methods and procedures of science" and the word "'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 509. Assertions must be derived from application of the scientific method and supported by appropriate validation to live up to a standard of evidentiary reliability. *Id.*

Courts evaluate an expert's methodology by evaluating the following criteria: (1) whether the theory or technique employed by the expert is generally accepted in the scientific community; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory can be and has been tested; (4) whether the known or potential rate of error is acceptable; and (5) whether the experts are proposing to testify about matters growing naturally or directly out of research, or whether they have developed their opinions expressly for purposes of testifying. *Id.* The trial court plays a

gatekeeping function and is tasked with scrutinizing the investigative, reasoning, or methodological process of the expert. *Hall v. Baxter Healthcare Corp*., 947 F. Supp (1996)*; see also Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009 (N.D. Cal. 2012).

Dr. Freeburg's failure to personally examine Ms. Zucchella violates foundational ethical and methodological principles of psychological evaluation. This violates Rule 702, as there is no reliable basis for Dr. Freeburg's opinions.

**A. Dr. Freeburg's Opinions Fails to Meet the Two-Step *Daubert* Test**

In *Daubert*, "[t]he Court articulated a two-step inquiry for determining whether scientific evidence or testimony is admissible": (1) "the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue'"; and (2) "the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (quoting *Daubert*, 509 U.S. at 592-93); *see also Cooper v. Brown*, 510 F. 3d 870, 942 (9th Cir. 2007) (holding that an expert may testify within her area of expertise so long as the expert's testimony "is both relevant and reliable"). "Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." *Id*. (citing *Daubert*, 509 U.S. at 591).

**1. Dr. Freeburg Did Not Comply with Mandatory Standards Set Forth by the American Psychological Association**

It is widely accepted and, indeed, required that psychological opinions must only be rendered after a personal examination is conducted. The American Psychological Association's *Ethical Principles of Psychologists* sets forth a *mandatory* code for all members of the American Psychological Association and contains "enforceable rules for conduct as psychologists." Chandoo Decl., Ex. 2 at 1. In Section 9.01(b) of *Ethical Principles of Psychologists*, the American Association of Psychologists requires psychologists to "provide opinions of the psychological characteristics of individuals *only*

*after they have conducted an examination of the individuals* adequate to support their statements or conclusions." Chandoo Decl., Ex. 2 at 29 (emphasis added).

Indeed, the need for a personal examination is so great that it is also a hallmark of the American Psychiatric Association's *Principles of Medical Ethics*. Section 7.3 sets forth the "Goldwater Rule," which provides, "[I]t is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement." Chandoo Decl., Ex. 3 at 9. Indeed, it is mandatory for psychologists to conduct examinations of individuals in a way that is "adequate to support their statements or conclusions" before opining on the examinee's psychological characteristics. *Id.*

The American Psychological Association's "enforceable rules" very much apply to Dr. Freeburg. Not only is she a member of the organization and two of its Divisions, but she has been an "Approved Continuing Education Provider" for the organization since 2015. Chandoo Decl., Ex. 1 at 17, 22. Indeed, by her own admission, Dr. Freeburg testified that psychological testing and personal examination is "helpful to understand now what [an individual's] trajectory was in the past." Chandoo Decl., Ex. 4 at 42:9-20; *see also* Chandoo Decl., Ex. 1 at 6 ("The preference in litigation cases is to see the person face-to-face."). Despite this, Dr. Freeburg has rendered opinions in this case without ever examining Ms. Zucchella. Chandoo Decl., Ex. 4 at 23:19-21. She has not even met her. *Id.* Dr. Freeburg "never administered any type of the mental status tests to [Ms. Zucchella]" and was "never asked to conduct a mental health examination or evaluation" of Ms. Zucchella or "to administer any kind of a mental health testing to the Plaintiff in this case." *Id.* at 23:9-25.

Despite this, Dr. Freeburg's report is full of representations regarding Ms. Zucchella's symptoms and behavior. For example, Dr. Freeburg writes, "Overall, while [Ms. Zucchella] has some mild symptoms at times – tearfulness and difficulty with dates, there is no indicated of 'marked' symptoms in his report, based on her account, psychological testing, or clinical behavioral observations." Chandoo Decl., Ex. 1 at 9; *see*

*also* Chandoo Decl., Ex. 1 at 14 ("There is no indication she would not have continued working for Olympusat, but for her termination."); Chandoo Decl., Ex. 1 at 9 ("While the ideas of persecution on the paranoid scale (RC6=75T) is elevated, this is more indicative of a situationally based elevation given the lawsuit allegation she has and that of the countersuit.").

Dr. Freeburg's failure to personally examine Ms. Zucchella also violates Dr. Freeburg's own admitted best practices. During her deposition, Dr. Freeburg testified that, in all but five of the approximately 30 times she has been retained as a neutral, she has "examine[d] the person whose mental health was at issue," which included "some type of interview" and the "administration of [] psychological tests." Chandoo Decl., Ex. 4 at 10:14-23. In the five instances when Dr. Freeburg did not conduct a personal examination, the examinee "wasn't actually alive" or "ha[d] a severe illness of sorts" that required "an ADA accommodation," such as "they can't operate use their hands or they might be blind." *Id.* at 11:13-12:8. She further testified, "I've never rendered an opinion on diagnosis of a person that I did not actually interview," and that it is "often [in] criminal cases where you don't have an opportunity to do psychological testing." *Id.* at 42:25-43:6, 41:13-42:8.

Courts have repeatedly upheld the principle that a personal examination is a prerequisite to the presentation of psychological testimony. For example, in *U.S. v. Finley*, 301 F. 3d 1000 (9th Cir. 2002), a party wanted to call a mental health expert as a witness to show that plaintiff had a mental condition and, thus, could not harbor an intent to commit fraud. 301 F.3d at 1005-07. The Court found that the expert's methodology was sound and, thus, the expert's opinion was reliable because he had administered and "relied on accepted psychological tests, from which he drew sound inferences, and he took a thorough patient history, including meeting with [the examinee's] wife and observing [the examinee's] behavior." *Id.* at 1009. The Court concluded that the expert "based his diagnosis on proper psychological methodology and reasoning" and "did not deviate in any way from his normal practice of conducting psychological evaluations." *Id.* at 1009.

Thus, his testimony was admissible. *Id.* at 1009, 1012.

Another example is *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995), in which prisoners filed suit, "alleging that the mental health care provided at most institutions within the California Department of Corrections is so inadequate" that they violate the prisoners' constitutional rights. 912 F. Supp. at 1293. The prisoners sought to introduce expert opinions attesting to the prisoners' suffering and the prevalence of mental illness in the jails. *Id.* at 1303. The court found, "The clinical testimony of plaintiffs' experts is precisely the type of testimony contemplated by the Federal Rules of Evidence: testimony offered by three psychiatrists and one clinical psychologist concerning the condition of mentally ill inmates based on statements by inmates, review of medical records, *personal observation*, and *interviews with custodial and clinical staff*." *Id.* (emphasis added).

For psychological experts, courts have very clearly based this step of the *Daubert* analysis on observations, interviews, and personal examination. *See, e.g.*, *Penny v. State Farm Mutual Automobile Insurance Company*, 474 F. Supp. 3d 1176, 1179 (2020) (admitting opinions from a psychiatrist who performed neuropsychological evaluation/testing on Penny over the course of three sessions and allowing the expert to testify about his observations during those sessions); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164 (N.D. Cal. 2015) (admitting psychiatrist's testimony because it were based on personal experience and an interview with the examinee); *U.S. v. Duhon*, 104 F. Supp. 2d 663 (W.D. LA 2000) (admitting testimony from a mental health expert because it was based on four to eight interviews, coupled with a review of documents and a discussion with a social worker). In contrast, in *U.S. v. Saya,* 961 F. Supp. 1395 (D. Haw. 1996), the opinion of a psychologist who did not conduct "direct psychological examination" or "neuropsychological testing" was excluded as inadmissible. 961 F. Supp. at 1396.

Dr. Freeburg's testimony fails to meet the scrutiny required in this step of the *Daubert* analysis. She opines on whether Ms. Zucchella has a number of psychological disorders, including adjustment disorder with anxiety, stress, hypervigilance, and suicidal

ideation without ever conducting a personal examination, in contravention of foundational principles and requirements in her field and in direct violation of her own standards and practices. Her methodology is flawed and her opinions will be of no use to the jury; indeed, such opinions only serve to misguide the trier of fact.

**2. Dr. Freeburg Did Not Comply with Additional Guidelines Set Forth by the American Psychological Association**

Independent of Dr. Freeburg's failure to conduct a personal examination of Ms. Zucchella, her failure to comply with other guidelines renders her opinions inadmissible. The American Psychological Associations *Guidelines for Psychological Assessment and Evaluation* (the "Guidelines") includes "statements that suggest or recommend specific professional behavior, endeavor, or conduct for psychologists." Chandoo Decl., Ex. 8 at 4. These guidelines "aim to facilitate the continued systematic development of the professional and to promote *a high level of professional practice* by psychologists." *Id.* Dr. Freeburg did not comply with the Guidelines.

Among other things, the Guidelines state, "Convergence and divergence of information from multiple sources informs the assessment process." *Id.* at 17. "Information from multiple resources is valuable and useful." The American Psychological Association defines "assessment" as a "complex activity" that integrates multiple sources of information, including "observation, semistructured or structured interviews, [and] third-party report[s]." Dr. Freeburg considered only one type of information: documents, some of which included third-party reports, such as Ms. Zucchella's medical records. She did not interview *anyone* in connection with her opinions regarding Ms. Zucchella's mental and psychological health, even Defendants' employees, who had worked with Ms. Zucchella for decades and who Dr. Freeburg had ready access to. Rather than follow these well-established guidelines, Dr. Freeburg's singular reliance does not live up to her profession's standard of professionalism, reliability, and methodology.

/ / /

Because an expert's testimony must be based on "the scientific method, as it is practiced by (at least) a recognized minority of scientists in the field" in order to meet the Daubert Standard for reliability, it is improper for a scientist to present testimony not supported by the minimum standard of their profession. *Lewert v. Boiron, Inc*., 212 F. Supp. 3d 917, 930 (C.D. Cal. 2016); *see also Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1141-42 (9th Cir. 1997). Dr. Freeburg's testimony is unreliable because her methods are not accepted by her professional community and such testimony cannot aid the trier of fact. *See Daubert v. Merrell Dow Pharms*., 43 F. 3d 1311, 1319 (9th Cir. 1995).

**B. Dr. Freeburg's Opinions Do Not Cite to Any Research or Methodology**

The Ninth Circuit requires statements by experts to be specific and clearly supported by scientific research. For example, in *U.S. v. Rincon*, 28 F. 3d 921 (9th Cir. 1994) the court found that the following statements were inadmissible because they did not describe any of the research and did not cite to specific sources:

- "There is a wealth of research supporting this point . . ."
- "The research is clear . . ."
- "The research suggests . . ."

28 F. 3d at 924. The court found, "none of the research was submitted or described so that the district court could determine if the studies were indeed scientific on the basis the Court explained in *Daubert*." *Id*. at 924. Clearly, statements that are not backed by sufficient evidence are not permitted as testimony. In a very analogous manner to the expert in *Rincon*, Dr. Freeburg makes many such statements that do not cite to a normative principle, standard, or guideline, including:

- "All mental health records are relevant to review, and at minimum, *should* be requested when those are not available, as those provide an understanding of psychological symptoms, functioning, and/or issues at an earlier point in time." Chandoo Decl., Ex. 1 at 7 (emphasis added).

/ / /

- "The intention of the subscales is to provide a further analysis of the breakdown of the score on the parent scale and *should not* be interpreted in the absence of a statistically significant elevation of the parent scale." *Id.* at 11 (emphasis added).
- "Research shows that child abuse creates a shadow on the psyche that increases the vulnerability to other stressors and mental disorders, but it *should not* be only based on the category." *Id.* (emphasis added).
- "Any violation of this sort is expected to bring some distress or sense of violation that *should* be explored, but there is no indication in the report this was considered." *Id.* at 12 (emphasis added).
- "Given her own experience with home invasions, prior sexual abuse, and current allegations, this *should* have been examined for the events and psychological reaction of this tragedy." *Id.* (emphasis added).
- "This is concurrent in the timeframe for her seeking mental health treatment and a relevant stressor that *should* have been analyzed." *Id.* at 13 (emphasis added).

Nowhere in these statement does Dr. Freeburg explain *why* these things should or should not have been considered. She does not cite to any principles or guidelines that support her assessment of what should or should not have been considered. There is no researched, scientific explanation for her statements. Her failure to follow her own remarks, by failing to examine Ms. Zucchella at all, do not meet the Ninth Circuit's stringent requirements.

Dr Freeburg's opinion is clearly not based on any recognized or reliable methodology. The court should exclude Dr. Freeburg's opinion.

**C. Dr. Freeburg Impermissibly Opines on Facts**

"[O]ur jury system looks to the jury itself to make the critical evaluations as to what actually occurred . . . . Juries do this role well and they do not need retained advocates to testify on their respective slants on the evidence. That should be saved for closing argument by counsel." *SEC v. Daifotis*, No. C 11-00137 WHA, 2012 U.S. Dist. LEXIS 79332, at *5 (N.D. Cal. June 7, 2012); *see also Foshee v. Zuniga*, No. 20-cv-00132-VKD,

2021 U.S. Dist. LEXIS 92474, at *16 (N.D. Cal. May 14, 2021) ("Mr. Smith may not testify regarding his view or assessment of what actually occurred. . . . The jury does not need assistance in making findings as to what actually happened."); *Reed v. Lieurance*, 281 F. Supp. 3d 1058, 1072 (D. Mont. 2017) (expert witness may not "state the facts of the case" or "comment on the evidence"); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST, 2018 U.S. Dist. LEXIS 208884, at *21 (N.D. Cal. Dec. 11, 2018) ("[A]n expert witness is not permitted simply to review deposition testimony and other evidence and then proffer an opinion about 'what actually happened in the case at hand.'").

This paragraph in Dr. Freeburg's report makes numerous statements and conclusions regarding facts in this case:

> At the time of her evaluation with Dr. Reading in August 2021, she was involved in not only her lawsuit but also the counter lawsuit that was not accounted for as a causative stressor. She was being accused of financial misappropriations and breaches of contract, which regardless of merit, was described by the plaintiff in the evaluation as erroneously misrepresented. *These issues ended up leading to her termination.* From approximately 2018, Dina Almeida was being investigated for the financial misappropriations, and *this led to a lawsuit filed against Ms. Almeida for those allegations*. *If the plaintiff was taking the kickbacks at the time as well, then there would be considerably more concern of the potential consequences to her when she witnessed the consequences of the lawsuit to her colleague than if this allegation was inaccurate*. However, she had also been accused of a financial conflict of interest in the past, in approximately 2008/2009, and allegedly had to return those funds, per her deposition. *She was then also investigated in the summer of 2019.* Therefore, the financial investigation and the action against her colleague occurred at the time that she started seeing a mental health professional in 2019, which certainly would be expected to have a significant impact and is temporal to the treatment sought.

Chandoo Decl., Ex. 1 at 12 (emphasis added). These statements are very much disputed in this case. For example, Ms. Zucchella disputes that Defendants had a legitimate, non-discriminatory reason for terminating her employment and claims the proffered reason is pretextual. Similarly, Ms. Zucchella's position—and, indeed Defendant Tom Mohler's pattern establishes this—is that, when women complain of sexual harassment, Mohler retaliates by bringing baseless claims against them. Thus, Ms. Zucchella disputes that the lawsuit filed against Ms. Almeida was not retaliatory.

Dr. Freeburg is not the trier of fact. She must be prohibited from opining on ultimate facts and misleading the jury.

## IV. CONCLUSION

For of the foregoing reasons, the Court should exclude Dr. Freeburg's opinions.

Dated: August 22, 2022

Respectfully Submitted,
SCOTT WAGNER AND ASSOCIATES
ROBERT D. NEWMAN, ATTORNEY AT LAW
HADSELL STORMER RENICK & DAI LLP

By: /s/ Hanna Chandoo
Dan Stormer
Barbara Enloe Hadsell
Brian Olney
Tanya Sukhija-Cohen
Hanna Chandoo
Attorneys for Plaintiff
MARIA L. ZUCCHELLA