Dan Stormer, Esq. [S.B. #101967]
Barbara Enloe Hadsell, Esq. [S.B. #086021]
Brian Olney, Esq. [S.B. #298089]
Tanya Sukhija-Cohen, Esq. [S.B. #295589]
Hanna Chandoo, Esq. [S.B. #306973]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
T: (626) 585-9600 / F: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        bhadsell@hadsellstormer.com
        bolney@hadsellstormer.com
        tanya@hadsellstormer.com
        hchandoo@hadsellstormer.com

Lindsey Wagner, Esq. (CBN 309808)
lwagner@scottwagnerlaw.com
Scott Wagner and Associates, P.A.
674 County Square Dr., Ste. #305
Ventura, CA 93003
Telephone: (561) 653-0008

Attorneys for Plaintiff
MARIA LUZ ZUCCHELLA

[Additional Counsel Cont. on next page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LUZ ZUCCHELLA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPUSAT, INC., a Florida corporation; TOM MOHLER, an individual, OLYMPUSAT HOLDINGS, INC., a Florida corporation, OCEAN NEW MEDIA, LLC, a Florida corporation, and OCEAN COMMUNICATIONS, INC., a Florida corporation, and DOES 4 through 50, inclusive,<br><br>Defendants.<br><br>OLYMPUSAT, INC., a Florida corporation; and TOM MOHLER,<br><br>Counter-Claimants,<br><br>v.<br><br>MARIA LUZ ZUCCHELLA, an individual,<br><br>Counter-Defendant. | Case No.: 2:19-CV-7335 DSF (PLAx)<br><br>[Assigned to the Honorable Dale S. Fischer Courtroom 7D]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS AND COUNTER CLAIMANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL ROBBINS**<br><br>Date:          September 19, 2022<br>Time:          3:00 p.m.<br>Place:         Courtroom 7D<br><br>Complaint Filed:      July 15, 2019<br>Counterclaims Filed:  October 25, 2019<br>Trial:                October 11, 2022 |

1   [Additional Counsel Cont. from previous page]

2

3   Robert Newman, Esq. [S.B. #86534]
    ROBERT D. NEWMAN, ATTORNEY AT LAW

4   3701 Wilshire Boulevard, Suite 208
    Los Angeles, California 90010

5   Telephone: (213) 487-4727

6   Facsimile: (213) 487-0242

7   Attorneys for Plaintiff

8   MARIA LUZ ZUCCHELLA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP TO DEFTS' MTN TO EXCL
TESTIMONY OF MICHAEL ROBBINS

# **TABLE OF CONTENTS**

**Page(s)**

Table of Authorities ........................................................................................... ii

I.      INTRODUCTION ........................................................................................ 1

II.      RELEVANT FACTUAL INFORMATION .................................................. 2

III.      LEGAL STANDARD .................................................................................. 4

IV.      ARGUMENT ............................................................................................... 5

         A.      Mr. Robbins' Opinions Regarding Defendants' Investigations are Admissible ................................................................................ 6

                B.      Mr. Robbins' Opinions are Based on the Evidentiary Record ............ 11

                C.      Mr. Robbins' Opinions are Relevant and Within His Expertise ......... 15

                D.      Mr. Robbins' Opinions Will Assist the Jury ...................................... 19

                E.      The Strong Probative Value of Mr. Robbins' Opinions is not Substantially Outweighed by a Danger of Unfair Prejudice, Confusion, or Misleading the Jury ...................................................... 22

V.      CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*A.D. v. Cal. Highway Patrol*
  No. C 07-5483 SI, 2009 U.S. Dist. LEXIS 21194 (N.D. Cal. Mar. 17, 2009) ............ 23

*Barfield v. Orange County*
  911 F.2d 644 (11th Cir.1990) ........................................................................................... 9

*Brink v. Union Carbide Corp.*
  41 F.Supp.2d 402 (S.D.N.Y.1997) ................................................................................... 9

*Burke v. City of Santa Monica*
  No. CV 09-02259 MMM, 2011 U.S. Dist. LEXIS 165475
  (C.D. Cal. Jan. 10, 2011) ............................................................................................... 13

*City of Pomona v. SQM N. Am. Corp*.
  750 F.3d 1036 (9th Cir. 2014) ......................................................................................... 6

*Curtis v. Oklahoma City Public Schools Bd.*
  147 F.3d 1200 (10th Cir.1998) ................................................................................... 9, 20

*Daubert v. Merrell Dow Pharmaceuticals, Inc*.
  509 U.S. 579 (1993) .............................................................................................. *passim*

*Davis v. Mason County*
  927 F.2d 1473 (9th Cir. 1991) ..................................................................... 8, 9, 22, 24

*Dickson v. Bosworth Co.*
  No. MO:21-CV-009-DC, 2022 U.S. Dist. LEXIS 86711
  (W.D. Tex. May 13, 2022) ............................................................................................. 22

*Donahoe v. Arpaio*
  No. CV-10-02756-PHX-NVW, 2013 U.S. Dist. LEXIS 203547
  (D. Ariz. Sep. 20, 2013) ............................................................................................ 8, 22

*EEOC v. Glob. Horizons, Inc.*
  No. CV-11-3045-EFS, 2014 U.S. Dist. LEXIS 65762
  (E.D. Wash. Apr. 9, 2014)........................................................................................ 20, 21

*Feliciano-Hill v. Principi*
  439 F.3d 18 (1st Cir. 2006) ........................................................................................... 24

*Ford v. Allied Mut. Ins. Co.*
  72 F.3d 836 (10th Cir. 1996) ............................................................................ 8

*Hangarter v. Provident Life & Accident Ins. Co.*
  373 F.3d 998 (9th Cir. 2004) ............................................................. 6, 7, 8, 9

*Hendrix v. Evenflo Co.*
  255 F.R.D. 568 (N.D. Fla. 2009), *aff'd sub nom.*, 609 F.3d 1183
  (11th Cir. 2010) ............................................................................................ 6

*King v. Rec. Equip., Inc.*
  No. CV 16-27-M-DLC, 2016 U.S. Dist. LEXIS 170131
  (D. Mont. Dec. 8, 2016) ................................................................................ 5

*Kumho Tire Co., Ltd. v. Carmichael*
  526 U.S. 137 (1999) ............................................................................. 4, 5, 19

*Lipsett v. University of Puerto Rico*
  740 F. Supp. 921 (D.P.R. 1990) ................................................................. 10

*Maiz v. Virani*
  253 F.3d 641 (11th Cir. 2001) .................................................................... 19

*Manion v. Ameri-Can Freight Sys.*
  No. CV-17-03262-PHX-DWL, 2019 U.S. Dist. LEXIS 132858
  (D. Ariz. Aug. 7, 2019) ......................................................................... 22, 23

*Mendoza v. Gaylord Container Corp.*
  No. C 03-3225, 2005 U.S. Dist. LEXIS 61462 (N.D. Cal. Mar. 9, 2005) ................... 16

*Mueller v. Daugherty Sys.*
  No. 1:18-cv-3358-MLB, 2021 U.S. Dist. LEXIS 163044
  (N.D. Ga. June 14, 2021) ....................................................................... 19, 22

*Mukhtar v. Cal. State Univ.*, Hayward
  299 F.3d 1053 (9th Cir. 2002) ................................................................... 6, 7

*Orth v. Emerson Elec. Co.*
  980 F.2d 632 (10th Cir. 1992) .................................................................... 11

*Primiano v. Cook*
  598 F.3d 558 (9th Cir. 2010) ........................................................................ 6

*Randall v. Smith's Food & Drug Ctrs., Inc.*
  No. 05-CV-139-J, 2006 U.S. Dist. LEXIS 97168 (D. Wyo. Mar. 23, 2006) ......... 21, 22

*Smith v. Colorado Interstate Gas Co.*
   794 F.Supp. 1035 (D. Colo.1992) ............................................................... 10

S*pecht v. Jensen*
   853 F.2d 805 (10th Cir. 1988)....................................................... 7, 9, 24, 25

*SPS Techs., LLC v. Briles Aero., Inc.*
   No. CV 18-9536-MWF, 2021 U.S. Dist. LEXIS 171484
   (C.D. Cal. Sep. 8, 2021) ............................................................................ 6

*Sugar Ass'n v. McNeil-PPC, Inc.*
   No. CV 04- 10077 DSF, 2008 U.S. Dist. LEXIS 89487
   (C.D. Cal. Jan. 7, 2008) ........................................................................... 23

*United States EEOC v. Scolari Warehouse Mkts., Inc.*
   488 F. Supp. 2d 1117 (D. Nev. 2007) ................................................... 15, 21

*United States v. Cruz-Garcia*
   344 F.3d 951 (9th Cir. 2003)................................................................... 23

*United States v. Finley*
   301 F.3d 1000 (9th Cir. 2002) ................................................................ 19

*United States v. Gwaltney*
   790 F.2d 1378 (9th Cir. 1986) ................................................................ 19

*United States v. Hankey*
   203 F.3d 1160 (9th Cir. 2000) ................................................................ 23

*United States v. W.R. Grace*
   504 F.3d 745 (9th Cir. 2007)................................................................... 23

*Walker v. Contra Costa Cty.*,
   Nos. C03-3723 TEH, C05-2800 TEH, 2006 U.S. Dist. LEXIS 86339
   (N.D. Cal. Nov. 21, 2006) ...................................................................... 24

*Ward v. Westland Plastics, Inc.*,
   651 F.2d 1266 (9th Cir.1980) ................................................................... 9

*Weaver v. Bright Horizons Family Sols., Inc*,
   No. CV 16-5325 DSF, 2017 U.S. Dist. LEXIS 98469 (C.D. Cal. June 26, 2017) ...... 14

*Wilson v. Muckala*,
   303 F.3d 1207 (10th Cir. 2002) ............................................................... 20

1

**California Cases**

2
3
*Davis v. Robert Bosch Tool Corp.*,
    B185408, 2007 Cal. App. Unpub. LEXIS 2537 (Mar. 28, 2007) ................................. 17

4
5
*Kotla v. Regents of Univ. of Cal.*,
    115 Cal. App. 4th 283, 8 Cal. Rptr. 3d 898 (2004) .................................................. 10, 18

6
7
*Shank v. CRST Van Expedited, Inc.*,
    No. G049844, 2015 Cal. App. Unpub. LEXIS 310 (Jan. 14, 2015) ................ 16, 17, 21

8
**California Statutes**

9
Cal. Gov. Code § 12940(k) ...................................................................................................... 5

10
**Federal Rules**

11
Fed. R. Evid. 403 ............................................................................................... 22, 23, 24, 25

12
Fed.R. Evid. 702 ............................................................................................................ *passim*

13
14
Fed.R. Evid. 703 .................................................................................................. 5, 6, 13, 25

15
Fed.R. Evid. 704 ............................................................................................................... 8, 24

16
Fed. R. Evid. 704(a) ................................................................................................................ 6

17
**Other Authorities**

18
19
20
*Advising California Employers and Employees*, the *California Association of
Workplace Investigators Quarterly*, and *Conducting Independent Investigations
in a Post-# MeToo Era* from the Dispute Resolution Journal ............................................ 7

21
Workplace Investigators' *Guiding Principles*……………………………………………...18

22
23
24
25
26
27
28

# I.   **INTRODUCTION**

On July 15, 2019, following many years of unrelenting sexual harassment, Plaintiff Maria Luz Zucchella ("Plaintiff") filed this lawsuit. Ms. Zucchella alleges that Defendants Tom Mohler and Olympusat, Inc. (collectively, "Defendants") discriminated against and sexually harassed her, subjected her and other women to a hostile work environment based on their gender, and to retaliation for complaining of same, and were negligent in the hiring, employment, supervision, and retention of Mr. Mohler, among other claims.  Key among Ms. Zucchella's claims is that Defendants failed to prevent such discrimination, harassment, hostile work environment and retaliation (*e.g.*, by failing to conduct an adequate investigation into the numerous allegations made by Plaintiff and numerous other women against Mr. Mohler), Defendants move to exclude the opinions and testimony of Plaintiff's workplace investigations expert Michael Robbins, who intends to testify about the complex industry standards regarding harassment trainings and corporate workplace investigations as they relate to Defendants' conduct, including their failures to act, in this case, resulting in years of subjection of Plaintiff and other women to unlawful harassment and discrimination. Defendants' motion should be denied in its entirety.

Mr. Robbins a well-qualified workplace investigator and teacher regarding harassment and discrimination in the workplace, having conducted and/or supervised well over 600 workplace investigations. Mr. Robbins has also served as a Consent Decree Monitor in Federal District Courts and has worked as an expert witness for plaintiffs and defendants on nearly 650 occasions. Though Defendants repeatedly malign Mr. Robbins' motivations, they do not challenge his qualifications. Mr. Robbins' opinions are relevant, admissible, and will help the jury determine whether Defendants conducted investigations that were adequate under well-accepted workplace investigation protocols to prevent the harassment, discrimination, hostile work environment and retaliation that Ms. Zucchella experienced at Olympusat.

Mr. Robbins used reliable methods in reaching his conclusions. He is entitled to rely on industry guidebooks, quarterlies, articles, and treatises regarding the components of

legitimate, adequate workplace trainings and investigations into allegations of harassment, discrimination, hostile work environment and retaliation for complaining of same. He is also entitled to rely on his decades of experience conducting such investigations, as well as the facts of the case in evidence. It is for the jury to decide what the underlying facts of the case are, and on that basis, whether they credit Mr. Robbins' testimony. Defendants' objections to the factual bases of Mr. Robbins' opinions go to the weight, not the admissibility, of his opinions and should be rejected. Defendants will have the opportunity address any concern they have about the factual bases of Mr. Robbins' opinions through cross-examination at trial. Given the probative value and soundness of Mr. Robbins' opinions, Plaintiff would be severely prejudiced if he is precluded from offering his opinions at trial, including as to the industry standards that apply to any purported investigations by Defendants into the allegations of misconduct that are central to this case, Defendants' policies and trainings regarding such misconduct, and to the extent any evidence exists of what Defendants did and did not do concerning complaints, whether these efforts amount to an "investigation" that is worthy of the name.

## II.   RELEVANT FACTUAL INFORMATION

Despite numerous complaints dating back to at least 2013 and including but not limited to those submitted by Ms. Zucchella, Defendants have produced next to no evidence that they engaged in meaningful investigations or took any discernable corrective actions to deter Mr. Mohler's predatory harassment.  FAC ¶ 46.  One of the few instances where Defendants have disclosed what if anything they did in this regard involves a written statement by Ms. Zucchella to Defendants' in-house counsel Colleen Glynn.  Upon being asked by Glynn to sign a statement that she had never seen Mohler engage in any inappropriate conduct toward her or any woman, Ms. Zucchella declined, emailing Glynn back: "Please don't ask me for a written statement unless it's legally required as this whole situation hits a little too close to home.  I'm in a very uncomfortable position here.  I've been very direct with Tom about his inappropriate comments repeatedly."  Chandoo Decl., Ex. 1. At her deposition, Ms. Glynn admitted that the only thing she did upon receipt of

this complaint was that she "brought it up to Tom", i.e., "shared with him what her email said." "And that is where it was left." "I know that there was going to be a conversation once I shared the information with Tom, that he was going to have a conversation with (Ms. Zucchella)." *See* Chandoo Decl., Ex. 2 at 182:17-183:19, 184:12-20, 185:10-186:14.

Mr. Mohler thus continued to engage in predatory behavior with impunity against Ms. Zucchella and other female consultants and employees, subjecting them to numerous acts of unwanted groping and touching from Mr. Mohler. FAC ¶ 47. Further, Mr. Mohler's ability to harass employees with impunity emboldened other Olympusat employees to engage in sexually offensive behavior toward females who worked on behalf of Olympusat. FAC ¶ 47; *see, e.g.*, Chandoo Decl., Ex. 3 at 255:17-19. For example, in 2017, Ms. Zucchella attended a business function at a Ritz-Carlton hotel where she observed Mr. Mohler tell consultant Dina Almeida that he wanted to impregnate her and ask her if her "fees" included anal sex. *See* Chandoo Decl., Ex. 3 at 274:9-274:18. At his deposition, Mohler admitted that he had joked about fathering Ms. Zucchella's son. Chandoo Decl., Ex. 4 at 49:11-51:6. Plaintiff complained about Mr. Mohler's behavior to her supervisor Arturo Chavez as well as to Olympusat's COO, Ray Allieri, among others, but Mr. Mohler's harassment did not stop. *See* Chandoo Decl., Ex. 3 at 274:6-276:13, 337:7-338:12; Ex. 5 at 8-15.

Mr. Mohler's out of control, offensive behavior was on full display at a 2018 dinner at Mastro's in Beverly Hills, where he subjected Ms. Zucchella and co-workers to sexual innuendo concerning his sexual prowess and other lewd remarks, boasting about how he would dress in leather to turn women on and taunting Ms. Zucchella by saying, "I should get in leathers and teach you a lesson." Chandoo Decl., Ex. 3 at 253:11-255:19. Mr. Mohler exacerbated Ms. Zucchella's discomfort by suggesting that he should have a "threesome" with her and Aurora Bacquerie, with whom he was engaged in a sexual relationship and had promoted to a management position. *See* Chandoo Decl., Ex. 3 at 244:15-245:10. Although Ms. Zucchella was a married mother, Mr. Mohler bragged in front of dinner attendees that he had fathered Plaintiff's child. FAC ¶ 41; *see* Chandoo Decl., Ex. 3 at

244:6-245:18, 252:10-255:19.

At his deposition, Mohler admitted that he had joked about fathering Ms. Zucchella's son. Chandoo Decl., Ex. 4 at 49:11-51:6.   Plaintiff complained about Mr. Mohler's behavior to her supervisor Arturo Chavez as well as to Olympusat's COO, Ray Allieri, among others, but Mr. Mohler's harassment did not stop.   *See* Chandoo Decl., Ex. 3 at 274:6-276:13, 337:7-338:12; Ex. 5 at 8-15.   Olympusat's former third highest placed manager, Kim Reed, testified at her deposition that she too had observed and complained about Mohler's inappropriate sexual misconduct toward female employees, all to no avail. Chandoo Decl., Ex. 6 at 63:9-65:17.

Despite these complaints, Defendants have produced next to no evidence that they undertook any investigation whatsoever.   Mr. Robbins should be allowed to testify what industry standards and Defendants' own policies set forth as the appropriate steps to take to investigate such conduct and complaints.   To prohibit him from doing so will serve to further abandon to their own devices the women such as Ms. Zucchella who had the courage to come forward to protest.

## III.   **LEGAL STANDARD**

The purpose of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The focus of this inquiry "must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 595. In analyzing whether specific testimony was admissible, such testimony must be both relevant (helpful to the jury) and reliable. *Id*. 589, 591-92. This gatekeeper function applies to all expert testimony, not just testimony based in science. *Kumho*, 526 U.S. at 138.

Additionally, in order to assess the expert's qualification to present the opinions

offered, the court looks to Federal Rules of Evidence, Rules 702 and 703. *Daubert*, 509 U.S. at 592. FR E, Rule 702, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE, Rule 703, provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

While expert opinions must be reliable, a trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho*, 526 U.S. at 152.

## IV. **ARGUMENT**

The only claim for which Defendants Olympusat, Inc. and Mohler argue Mr. Robbins' testimony should not be admitted is Ms. Zucchella's claim for Failure to Prevent Harassment, Discrimination or Retaliation pursuant to Cal. Gov. Code section 12940(k). Defendants' motion makes no argument regarding the admissibility of Mr. Robbins' opinions and testimony as they relate to any of Plaintiff's other claims. Additionally, nowhere in their motion do Defendants address Mr. Robbins' opinion that Defendants harassment training materials and delivery are inadequate. *See* Chandoo Decl., Ex. 5 at 14. As such, Defendants have waived any argument that Mr. Robbins' testimony regarding same should be excluded. *See*, *e.g.*, *King v. Rec. Equip., Inc.*, No. CV 16-27-M-DLC, 2016

U.S. Dist. LEXIS 170131, at \*3 n.1 (WL 8711290) (D. Mont. Dec. 8, 2016) ("Because this issue was not raised in King's motion in limine, the Court will not address it in this Order.").

The inquiry into the admissibility of an expert opinion under Federal Rule of Evidence 702 is a "flexible one." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993)). Similarly, "[t]he test of reliability is flexible." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). "[T]he rejection of expert testimony is the exception rather than the rule." *SPS Techs., LLC v. Briles Aero., Inc.*, No. CV 18-9536-MWF, 2021 U.S. Dist. LEXIS 171484, at \*6 (WL 4913509) (C.D. Cal. Sep. 8, 2021) (internal quotations and citations omitted). "So long as the expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility." *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd sub nom.*, 609 F.3d 1183 (11th Cir. 2010). Mr. Robbins' opinions clearly satisfy the requirements of *Daubert* and Federal Rules 702 and 703 and are not unduly prejudicial.

**A.     Mr. Robbins' Opinions Regarding Defendants' Investigations are Admissible**

Defendants first argue that Mr. "Robbins' proposed testimony consists of nothing more than the legal arguments of an attorney who has not entered an appearance in this case." Dkt. 369-1 at 8:17-19.[1] That this sweeping accusation is unmoored from the facts and the law.

"It is well-established that expert testimony concerning an ultimate issue is not per se improper." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ.*, *Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). Fed. R. Evid. 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." "That said, an expert witness cannot give an opinion as to her *legal*

---

[1] Pagination refers to ECF pagination.

*conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016 (quoting *Mukhtar*, 299 F.3d at 1066 n.10). "Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* at 1017 (quoting S*pecht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). In other words, where "the witness d[oes] not invade the court's authority by discoursing broadly over the entire range of the applicable law," his or her testimony is admissible. *Specht*, 853 F.2d at 809. Experts may not, however, "define the parameters within which the jury must exercise its fact-finding function," *i.e.*, "the purpose of testimony [must not be] to direct the jury's understanding of the legal standards upon which their verdict must be based." *Id.* at *809-810.

Mr. Robbins' intended testimony is laid out clearly on the first page of his expert report, where he states that he anticipates expressing opinions concerning Defendants' "failure to follow standard practices (and its own policies and procedures) with respect to preventing harassment, discrimination and retaliation from occurring. This includes the Company's failure to investigate harassment, discrimination and retaliation allegations raised both by plaintiff, Maria Zucchella, and also by others at the Company." Chandoo Decl., Ex. 5 at 1. Throughout his Report, Mr. Robbins discusses these standard practices. *Id. passim*. Nowhere in his Report does Mr. Robbins opine as to whether Defendants harassed, retaliated, or discriminated against Plaintiff, nor does he opine as to whether Defendants failed to prevent same. *Id.* Despite arguing that the entirety of Mr. Robbins' expert opinion is "pure legal advocacy" (Dkt. 369-1 at 8:15-16), Defendants cite to just two pages (17 and 20) of Mr. Robbins' report in making this specious argument.

Defendants claim that on page 17 of his report, Mr. Robbins "testifies regarding his 'expert' application of the facts of this case to the [sic] what he interprets the law to be." Dkt. 369-1 at 10:5-8. But on page 17 of his Report, Mr. Robbins simply discusses "Standard practice" for conducting workplace investigations, citing EEOC and DFEH guidebooks for such investigations, as well as other guidebooks, articles, and periodicals such as CEB's *Advising California Employers and Employees*, the *California Association*

*of Workplace Investigators Quarterly*, and *Conducting Independent Investigations in a Post-# MeToo Era* from the Dispute Resolution Journal." Chandoo Decl., Ex. 5 at 17. To the extent Defendants argue that Mr. Robbins' consideration of such guidebooks and scholarly articles amounts to impermissible legal conclusions, it is completely baseless. These items simply lay the foundation for industry standards with respect to workplace investigations. As an expert in such investigations, Mr. Robbins' job is to explain to the jury what standard practices are against the backdrop of Defendants' actions in this case. This is precisely what an expert is supposed to do. *See Hangarter*, 373 F.3d at 1016 (Expert's "testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith"); *see also Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (concluding that "expert witness for [the defendant] was permitted to testify" to "the issue of bad faith" *by showing that the defendant relied on both "Iowa law" and "industry practice*.") (emphasis added).

Defendants also take umbrage with Mr. Robbins' opinion, on pg. 20, that Defendants' actions in this case were inadequate to prevent retaliation and harassment. Defendants complain that this must be a "legal conclusion," apparently because it addresses an ultimate issue, to wit, whether Defendants took all reasonable steps to prevent harassment, discrimination, or retaliation against Ms. Zucchella. Dkt. 369-1 at 9:8-10. Defendants overstate the law. Instructive on this point is *Davis v. Mason County,* 927 F.2d 1473 (9th Cir. 1991) in which the Ninth Circuit considered the admissibility of testimony from police expert D.P Van Blaricom. The *Davis* court stated:

> [Defendant] objected to plaintiffs' police expert, Donald Van Blaricom, because he testified that Sheriff Stairs was reckless in his failure to adequately train his deputies, and that there was a causal link between this recklessness and plaintiffs' injuries. They contend that this was improper opinion testimony on a question of law.
> This argument is without merit. Fed.R.Evid. 704 allows expert witnesses to express an opinion on an ultimate issue to be decided by the jury. Moreover, Fed.R.Evid. 702 permits expert testimony comparing conduct of parties to the industry standard. The trial court did not abuse its discretion in admitting Van Blaricom's testimony.

927 F.2d at 1484-85. In another case involving the same expert, *Donahoe v. Arpaio*, No.

CV-10-02756-PHX-NVW, 2013 U.S. Dist. LEXIS 203547, at *13-14 (WL 12419625) (D. Ariz. Sep. 20, 2013), his testimony was once again permitted, with the Court explaining,

> Here, Mr. Van Blaricom may testify to industry standards in police investigative practices. This testimony may help the jury understand Plaintiff's claims, particularly with respect to Count Nine of the Second Amended Complaint. Further, he may testify about Defendants' investigation into Plaintiff Stapley and whether it deviated from those standards. As in *Hangarter* and *Davis*, such comparison testimony does not conflict with Rules 702 or 704.
>
> Mr. Blaricom may not offer, however, any legal conclusions he believes the alleged deviations warrant. He may not, for example, opine that Defendants alleged practices are unconstitutional or constitute negligent supervision.

Here, too, Mr. Robbins is comparing Defendants' conduct to the industry standard. Though his testimony may upset Defendants, Mr. Robbins does not, as Defendants suggest, plan to testify that Defendants *are liable* for any of Plaintiff's claims. His opinions do not "direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht*, 853 F.2d at *809-810.

For these reasons, Defendants' string-cite is completely inapposite. *See* Dkt. 369-1 at 9:11-10:2. In each of those cases, the testimony at issue had nothing to do with industry standards for workplace investigations, which go directly to Plaintiff's negligence claims as well as her failure to prevent claim. Rather, the testimony at issue in those cases was determined to be fundamentally lay testimony in nature and included direct statements from the purported experts regarding a party's liability on specific claims. *See Curtis v. Oklahoma City Public Schools Bd.,* 147 F.3d 1200, 1219 (10th Cir.1998) (excluding testimony as to "whether the plan constituted harassment or retaliation"); *Barfield v. Orange County*, 911 F.2d 644, 651, fn. 8 (11th Cir.1990) (excluding testimony that the plaintiff was a victim of discrimination by the defendant); *Ward v. Westland Plastics, Inc.,* 651 F.2d 1266, 1270–1271 (9th Cir.1980) (expert "opinion that Westland discriminated against Ward on account of her sex" excluded because "whether gender was the basis of differential treatment is not so technical as to require the aid of an expert"); *Brink v. Union Carbide Corp.,* 41 F.Supp.2d 402, 405 (S.D.N.Y.1997) (age discrimination claim can be evaluated and understood by jury without assistance of a human resources

expert); *Smith v. Colorado Interstate Gas Co.*, 794 F.Supp. 1035, 1044 (D.Colo.1992) ("Gender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert"); *Lipsett v. University of Puerto Rico*, 740 F. Supp. 921, 925 (D.P.R. 1990) (lay people can understand and evaluate "whether the working environment" was "so heavily charged with sexism that it was intimidating, hostile, and offensive").

These cases, as most of the cases cited by Defendants, involve experts whose opinions are *not* introduced to assist the jury in understanding standard practices for workplace investigations.[2] They involve experts whose opinions are introduced to opine on *whether the underlying harassment, discrimination, or retaliation occurred*. *See* the string cite addressed *supra*; *see also* Defendants' numerous citations to *Kotla v. Regents of Univ. of Cal.*, 115 Cal. App. 4th 283, 8 Cal. Rptr. 3d 898, 905 (2004) (excluding workplace expert's credibility determinations that various actions on the part of the employer amounted to "a very obvious motive," "pretext, and "indicative of retaliation."). Mr. Robbins opines on nothing of the sort, stating, "I am not in a position to determine credibility and so have no idea whether the above allegations are true. Indeed, Mr. Mohler denies most of them." Chandoo Decl., Ex. 5 at 7.

Mr. Robbins' testimony is based on numerous guidebooks and scholarly articles, as well as decades of experience in workplace investigations and will assist the jurors in understanding what standard practices are when it comes to policies, training, and investigating workplace harassment. *See* Chandoo Decl., Ex. 5 at 13-20. Defendants' failings regarding these investigations are squarely at issue and, as discussed *infra*, Defendants have offered nothing to support their belief that the average person understands standard corporate workplace investigation practices, particularly where, as here, the individual to be investigated is the CEO *and* 91-percent shareholder of the company.

---

[2] As discussed, *infra*, in the few cases cited by Defendants that do address experts opining on workplace investigations, they were only excluded because, unlike here, the claims before the jury did not put the adequacy of such an investigation at issue.

**B.      Mr. Robbins' Opinions are Based on the Evidentiary Record**

Defendants next argue that Mr. "Robbins' expert opinions are grounded on the false assumption of fact that Olympusat failed to conduct any investigation into the alleged complaints of harassment, discrimination, and retaliation, both by Plaintiff, and others."[3] Dkt. 369-1 at 10:25-27. This is incorrect. Mr. Robbins' thorough review of the evidentiary record is precisely what he proffers as a basis for his conclusions. And even if Defendants' accusations weren't manifestly false (they are), "as long as a logical basis exists for an expert's opinion . . . the weaknesses in the underpinnings of the opinion go . . . to the weight and not the admissibility of the testimony." *Orth v. Emerson Elec. Co.,* 980 F.2d 632, 637 (10th Cir. 1992).

In his Report, Mr. Robbins opines,

> Mr. Mohler testified that he was not aware of any harassment (and/or similar) complaints made against him – even in circumstances in which the Company had received a letter detailing such complaints. Clearly, there could be no thorough investigation if Mr. Mohler, as the accused was not even aware of complaints made against him.

Chandoo Decl., Ex. 5 at 13 n. 26.  Mr. Robbins also opines,

> Despite the Company's policy that the General Counsel conduct the investigation, it would not have been appropriate for Ms. Glynn to do so as she was at a lower level than the accused, Mr. Mohler. Plus, she reported to him. In a situation such as this, the only alternative would have been for an external investigator to conduct the investigation.

Chandoo Decl., Ex. 5 at 12 n. 21.  Mr. Robbins' Report continues,

> Ms. Glynn testified that, rather than following up with plaintiff to find out what she meant by Mr. Mohler's 'inappropriate comments,' she simply told Mr. Mohler about plaintiff's email – knowing that Mr. Mohler would follow up with plaintiff to discuss his own alleged inappropriate comments. She testified that she knew that Mr. Mohler 'was going to have a conversation with her [i.e., with plaintiff].'

Chandoo Decl., Ex. 5 at 11.

At his deposition, referencing Mr. Mohler's testimony, Mr. Robbins stated, "If you

---

[3] The fact that large swaths of Defendants' *arguments* in this section of their motion are lifted verbatim from the Report of Defendants' "rebuttal expert" Howard Knee strongly supports Plaintiff's argument in her motion to exclude his testimony that Mr. Knee's "report" is inadmissible legal advocacy.

are not asking details of the accused, **it's not an investigation**.  If you go to the accused and you say, 'Well did you harass somebody?' 'No, I didn't.'  **That is not an investigation**."  Chandoo Decl., Ex. 11 at 130:12-22 (emphasis added).  Mr. Robbins continued,

> [I]t is so fundamental that you, for example, interview the responding party about the allegations.  If you are not doing that, **it is not even an investigation**, and it is so fundamental that you have, if at all possible, because sometimes people won't cooperate, interviews and documents showing that you interviewed the complaining parties.  If you don't have that, it is such a fundamental departure of standard practice, it is not even an investigation.

*Id.* at 131:10-20 (emphasis added). Mr. Robbins also testified,

> Also, Mr. Mohler states that in 2019, Ms. Glynn did an investigation of Ms. Gonzalez's allegations.  So what I have to look at then is, **was it an investigation or not**.  So he says that she interviewed witnesses.  There is not a single piece of paper that indicates, or electronic piece of paper that indicates she interviewed witnesses.  **If there was an investigation, standard practice is** to take notes or in some way, take down information that witnesses are giving in a uniform way. … You need to have some kind of outcome that is written down somewhere, otherwise, you are not keeping track of harassment allegations, nothing like that.

*Id.* at 129:19-130:7 (emphasis added).

In support of their argument, Defendants lean *exclusively* on three one-paragraph declarations from employees Arturo Chavez, Manuel Saldivar, and John Baghdassarian. Dkt. 369-1 at 11:13-22. *See* Chandoo Decl., Exs. 7-9. Defendants claim that these declarations amount to "evidence of non-privileged investigations" which Mr. Robbins did not consider, rendering his opinions fatally flawed under *Daubert*'s second prong. Defendants are wrong.

First, even calling these statements "declarations" is misleading, as none of them are signed under penalty of perjury or comport with the requirements of Title 28 §1746. Further, the unsworn statements squarely do not contain evidence of any investigations. Rather, they are shockingly brief and state **only** (in extremely similar language) that these three employees did not witness harassment toward Ms. Zucchella. *Id.* The declarants state nothing about whether they witnessed sexually offensive conduct by Mohler toward other

women and state absolutely nothing about **any investigations**. *Id.*   Defendants present absolutely no information as to how these statements were obtained, by whom, or how they were considered by Defendants. They include no information about the nature, conclusions, or steps taken with respect to purported investigations into complaints by Ms. Zucchella, let alone any of Ms. Zucchella's "me too" witnesses such as Adrianna Herran, Dina Almeida, Grace Gonzalez, Alexandria Aguilar, Jade Valentini or Kim Reed.

When asked at his deposition about these three statements, Mr. Robbins stated, "I can say what this fundamental departure [from standard practices] is there, too. Would you like to hear about that?" Chandoo Decl., Ex. 11 at 131:21-132:3. Defense counsel apparently did not want to hear about that, because he immediately changed the subject. *Id.* Further, even if these unsworn statements were somehow evidence of an investigation, "[n]othing in Rule 703 requires that the expert consider and rely on *every* piece of evidence admitted at trial." *Burke v. City of Santa Monica*, No. CV 09-02259 MMM (PLAx), 2011 U.S. Dist. LEXIS 165475, at *36-37 (WL 13213593) (C.D. Cal. Jan. 10, 2011). "Rather, the rule requires only that the facts which underlie his opinion not be contrary to the evidence." *Id.*

> Defendants also malign Mr. Robbins' expert opinion that:
> If you look at the AWI [Association of Workplace Investigators] Guiding Principles, it talks about the relative positions within the organization. At AWI, we teach exactly what I just said. You can't investigate your boss or internally the CEO of an organization or somebody who has hired you, who can affect your employment. It is not just my view. It is AWI's. It's the view, the view of pretty much [anybody] who knows about investigations, knows it has to be neutral and impartial.

Chandoo Decl., Ex. 11 at 25:7-17. According to Defendants, this opinion was rendered "presumably because an outside investigator like himself was not paid to perform the investigation." Dkt. 369-1 at 11:23-26. Disregarding Mr. Robbins' reference to AWI standards, Defendants point to nothing in evidence that supports their mudslinging, nor do they explain how Mr. Robbins' opinion is not based on the evidentiary record (*i.e.*, nothing in the record controverts that Defendant Mohler is the CEO and 91 percent shareholder of the Olympusat entities, nor that Ms. Glynn, who directly reports to Mr. Mohler, was

1  charged with conducting workplace investigations).

2  As is clear, *supra*, Mr. Robbins opines on what standard workplace investigations

3  consist of against the inadequacy of Defendants' "investigation", as well as against the

4  backdrop of decades of experience and numerous guidebooks and articles setting the

5  landscape of industry standards for corporate workplace investigations.

6  Lastly, Defendants' citation to this Court's decision in *Weaver v. Bright Horizons*

7  *Family Sols., Inc*, No. CV 16-5325 DSF (JPRx), 2017 U.S. Dist. LEXIS 98469, at *14 (WL

8  11428736) (C.D. Cal. June 26, 2017) is inapposite. *See* Dkt. 369-1 at 12:19-21. First and

9  foremost, in that case, this Court did not exclude Mr. Robbins' testimony from trial as

10  Defendants claim. Rather, this Court decided not to consider Mr. Robbins' declaration *in*

11  *support of an opposition to a motion for summary judgment.* In other words, in that case,

12  Mr. Robbins' declaration was apparently submitted by the plaintiff's attorneys in an

13  attempt to contest material facts. But because Mr. Robbins was not a witness to any facts

14  in dispute, this Court refused to consider his declaration because it "relie[d] on facts not in

15  evidence." By way of example, at paragraph 42 of the *Weaver* plaintiff's statement of

16  contested facts, the plaintiff cited to the declaration of Michael Robbins for the statement,

17  "The Center unilaterally ceased providing accommodations in a completely directive, non-

18  interactive manner." Chandoo Decl., Ex. 10. Clearly, Mr. Robbins' *conclusions* regarding

19  the facts with which he was presented in that case were not *themselves* facts to be

20  considered at the summary judgment stage. But that has no bearing here. The question

21  Defendants put before the Court is *not* whether Mr. Robbins was a witness to the underlying

22  facts, but rather whether Mr. Robbins' *opinions* are sound if he did not consider the three

23  employee statements identified by Defendants. Defendants make no claim that Mr.

24  Robbins "relie[d] on facts not in evidence," rather, they contend that he *did not rely* on

25  certain facts *in evidence*, and that this renders his testimony inadmissible under *Daubert*'s

26  second prong. As explained above, it squarely does not.

27  / / /

28  / / /

OPP TO DEFTS' MTN TO EXCL
TESTIMONY OF MICHAEL ROBBINS

### C.   Mr. Robbins' Opinions are Relevant and Within His Expertise

Defendants complain that Mr. Robbins is attempting to offer expert opinion as to what Defendants policies are, but do not point to a single portion of his testimony or expert report where he does this. Mr. Robbins opines that Defendants' investigation policies are "consistent with standard practices." Chandoo Decl., Ex. 5 at 18. Defendants' failure to follow them *is* coterminous with Defendants' failure to follow standard industry practices. Mr. Robbins does not pretend to be an expert on Defendants' policies and procedures. His expertise is in workplace harassment and discrimination investigations and trainings. He knows the standard practices regarding same and will explain the industry standards to the jury. Defendants are inventing a conflict where there is none.

Defendants next imply (without outright arguing) that Mr. Robbins, who has decades of experience conducting harassment and discrimination trainings, conducting over 600 workplace investigations, serving as a Consent Decree Monitor in Federal Courts, and appearing as an expert witness for defendants and plaintiffs in nearly 650 matters, is somehow not an expert on workplace investigations. Chandoo Decl., Ex. 5 at Ex. A. Frankly, this is preposterous. Mr. Robbins has been recognized as a pre-eminent workplace practices expert for decades. For instance, in *United States EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1134 (D. Nev. 2007), the Court found that

> Mr. Robbins has worked as an expert witness on more than 250 occasions, and he has extensive experience conducting harassment, discrimination and employee misconduct investigations- having conducted over 200 workplace investigations. Many of his other accomplishments, such as his background in employment law, his publications in employment law journals and reports, his teaching and lecturing experience at various employment law centers and law schools, and his membership on the Executive Board of the Los Angeles County Bar Association's Labor & Employment Law Section, as well as others, leads this Court to view Mr. Robbins as a reputable source of expert testimony.

In the years since Judge Ezra opined on Mr. Robbins' expertise, the number of workplace investigations he has conducted has grown to over 600, as has the number of times he has worked as an expert witness, to nearly 650. Chandoo Decl., Ex. 5 at Ex. A.

There can be no doubt about Mr. Robbins' qualifications. Eschewing the numerous

cases in which Mr. Robbins' expertise was not only admitted, but relied upon by juries and courts alike, Defendants cite to a single seventeen-year-old unreported case where Mr. Robbins' testimony was excluded: *Mendoza v. Gaylord Container Corp.*, No. C 03-3225, 2005 U.S. Dist. LEXIS 61462 (WL 8162619) (N.D. Cal. Mar. 9, 2005). But that case bears nothing upon the facts at issue here. Glaringly, *Mendoza* did not involve claims of failure to prevent or negligent corporate hiring, supervision, or retention. *Id.* at *1-2. In other words, in *Mendoza*, Mr. Robbins did not proffer expert testimony regarding workplace investigations or trainings at all. Rather, *Mendoza* involved claims that the defendant violated FEHA by "(1) failing to engage in the interactive process, (2) failing to accomodate [sic] [the plaintiff], and (3) terminating [the plaintiff's] employment due to disability." *Id.* at *2. Even more, in *Mendoza*, the plaintiff "**concede[d]** that Robbins' opinion and methodology do not satisfy the specific factors enumerated in *Daubert*." *Id.* at *9 (emphasis added).  The plaintiff in that case "**failed to offer**, let alone demonstrate, any reason **why [industry] standards are relevant to this case**." *Id.* (emphasis added). The plaintiff simply recited Mr. Robbins' experience **without demonstrating** how it related to identifying standard management practices of the defendant's own practices. *Id.* at *10-11.

Here, Plaintiff makes no such concession. In this case, Mr. Robbins' expert opinion focuses on standard practices regarding corporate workplace investigations, which is highly relevant to Plaintiff's claims. And Mr. Robbins' opinion and methodology clearly satisfy the *Daubert* factors and are squarely within his area of expertise. First, as discussed *supra*, Mr. Robbins' experience and opinions are focused on industry standards with respect to training regarding and investigation of the types of complaints at issue here. Second, whether Defendants took *all reasonable steps* to prevent such harassment will be before the jury. In assessing this, the jury will need to understand industry standards for complex corporate HR practices when it comes to investigating such complaints. This is the heart of Mr. Robbins' testimony. *See* Chandoo Decl., Ex. 5, *passim*.

By way of example, in *Shank v. CRST Van Expedited, Inc.*, No. G049844, 2015 Cal. App. Unpub. LEXIS 310, at *39 (WL 176628) (Jan. 14, 2015), at issue was the defendant's

"fail[ure] to investigate or discipline the errant employee once [workplace] misconduct became known." California's Fourth District Court of Appeals held that a jury verdict finding liability was proper.   Mr. Robbins was the plaintiff's retained workplace investigation expert in that case and testified concerning, among other issues, the defendant's policies and practices, as well as the standard practice for workplace investigations. Mr. Robbins testified that

> once a complaint is made, there must be a complete and thorough investigation. The investigator must have an open mind. He or she should meet with the complainant, obtain the names of and speak to all witnesses, and meet with the accused. It is important to interview people face to face to gauge the person's reactions and thus his or her credibility. This is especially important in a harassment case, which is usually a he said/she said situation. The interviews should be thorough and detailed notes should be taken.
>
> Robbins also testified standard practice and EEOC guidelines provide the accuser should be interviewed, even if she has left the company. … Once the investigation is completed, a determination as to what occurred should be made. This is important so appropriate action can be taken. It is critical to take action. If there was harassment, the company may want to have additional antiharassment training and republish its policies. Employees need to know if they have complaints, the company will take them seriously and do something. Finally, once action is taken, the complainant should be told.
>
> Robbins testified plaintiff had made several complaints of sexual harassment, beginning with her statement to Bruns that Cotter wanted a romantic relationship and that she had had problems with her trainer.
>
> In her letter of resignation, plaintiff stated she did not want to be taken advantage of because she was female or be kicked off a truck because she did not sleep with her male codriver. She recounted another woman's statement a fleet manager had told her to seek out a codriver with whom she wanted to have a romantic relationship. Plaintiff also mentioned Wilson's tickling requests.
>
> All of these were harassment complaints. There was no investigation at that point and neither Oetken nor Barnes conducted a thorough investigation when they later saw the letter. […]
>
> As discussed above, the testimony of Robbins … and CRST's policy manual show CRST did not conduct a proper investigation, according to its own manual or standard practices.

*Id.* at \*40-41, 43. *See also*, *Davis v. Robert Bosch Tool Corp.*, B185408, 2007 Cal. App. Unpub. LEXIS 2537, at \*31 (WL 914872) (Mar. 28, 2007) (in a defamation case, affirming

an award of expert fees to the defendant for payments to Mr. Robbins based on a finding that Mr. Robbins' opinion "on [the defendant corporation's] investigation of [the plaintiff's alleged] malfeasance" was "relevant to [the defendant corporate executive].)" Defendants' reference to *Kotla*, 8 Cal. Rptr. 3d 898, 904 (2004) as "questioning whether years of experience investigating employment claim can make a person an expert" misstates the findings of that case. Dkt. 369-1 at 13:6-8. As discussed *supra*, in that case, California's First District Court of Appeal found that while the trial court correctly barred a workplace expert "from opining in a direct fashion that [the defendant] had acted out of a retaliatory motive," it "substantially undercut its earlier ruling and abused its discretion" "by thereafter allowing [the expert] to testify that certain facts in evidence were 'indicators' of retaliation." *Id.* at 903. Mr. Robbins refuses to render opinions regarding motive, liability, or any of the other bogey men conjured by Defendants. He says clearly, "I am not in a position to determine credibility and so have no idea whether the above allegations are true. Indeed, Mr. Mohler denies most of them." Chandoo Decl., Ex. 5 at 7.

Seeing that its argument lacks grounding, Defendants move on to posit that Mr. Robbins' testimony regarding workplace investigation standard practices is outside his expertise because Mr. "Robbins' purported industry standard is not the law." Dkt. 369-1 at 13:25-14:2. Plaintiff does not dispute that the Mr. Robbins' opinion that "nobody internal can conduct an investigation of Mr. Mohler, because he is the CEO, because he owns 91 percent of the company, [and y]ou can't investigate your boss" is not a legal conclusion. Chandoo Decl., Ex. 11 at 22:14-25. Of course it's not. What it is, however, is a statement of *standard practices*, which are squarely relevant to the jury's assessment of what steps companies are expected to take when their employees, let alone their CEO's and owners, are serially accused of harassment. Defendants write this off as "a standard that [Mr. Robbins] created and seeks to hold Olympusat to based on his own opinion of the steps that (unspecified) employers normally take." Dkt. 369-1 at 13:21-23. But Defendants fail to mention that far from a whimsical invention of Mr. Robbins' mind, this standard comes from the Association of Workplace Investigators' *Guiding Principles*. Chandoo Decl., Ex.

11 at 25:7-17. Moreover, Defendants "cite[] no authority for the proposition that an expert's opinions are unreliable if based on non-mandatory guidance" and "there is no question that an expert may still properly base his or her testimony on professional study or personal experience." *Mueller v. Daugherty Sys.*, No. 1:18-cv-3358-MLB, 2021 U.S. Dist. LEXIS 163044, at *16 (WL 3754582) (N.D. Ga. June 14, 2021) (permitting workplace investigations expert to testify based on her personal experience and Association of Workplace Investigators' Guiding Principles) (citing *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) and *Kumho*, 526 U.S. 137, 151). In sum, Defendants mischaracterize Mr. Robbins' intended testimony, scholarly sources for his opinions, and decades of experience in a complex matter that the jury will be required to assess in this case: standard practices in corporate workplace investigations.

**D.    Mr. Robbins' Opinions Will Assist the Jury**

Defendants next argue that industry standard practices of complex corporate human resources investigations are "within the knowledge and experience of ordinary lay people." Dkt. 369-1 at 14:9-23. Not only does this argument fail to pass the smell test, but it is also unsupported by the law.

The Ninth Circuit has cautioned that courts should not "overstate the scope of the average juror's common understanding and knowledge." *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002). And expert testimony need only provide "appreciable help" to the jury to be admissible. *See United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). "[T]he average juror is unlikely to be familiar with human resources management policies and practices, the basis for evaluating Defendant's investigation." *Mueller*, 2021 U.S. Dist. LEXIS 163044, at *23 n.6 (WL 3754582) (refusing to exclude workplace practices expert who opined on the adequacy of a harassment investigation).

Defendants assert that "many, if not most" federal circuit courts exclude this type of expert testimony." (Dkt. 369-1 at 16:7-9). This is belied not only by the cases cited by Plaintiff throughout this opposition, but also by the fact that in support of their glaringly false statement, Defendatns cite to only two Circuit Court opinions, both from the Tenth

Circuit: *Curtis*, 147 F.3d at 1218 and *Wilson v. Muckala*, 303 F.3d 1207, 1218-19 (10th Cir. 2002). Even still, *neither of these cases* involve the exclusion of expert testimony on workplace investigations on the ground that standard practices of corporate human resources investigations are within the knowledge of ordinary lay people. The ruling *Curtis* had nothing to do with workplace investigations, and even still, the Court *declined to exclude* the proffered expert's testimony "about what constitutes effective recruiting in the particular context of historically black colleges and universities and about the difficulty and potentially negative effects of recruiting at these institutions during the summer months." *Curtis*, 147 F.3d at 1218. Rather, the Court simply excluded expert testimony regarding whether the outcome of the recruitment plan matched with the desired results, *i.e.*, whether the plan itself amounted to harassment or retaliation. *Id. Wilson* is inapposite for the same reason as the majority of the cases cited by Defendant and discussed in this brief: it did not involve any claims that hinge on a failure to take all reasonable steps to prevent harassment, retaliation, or discrimination. 303 F.3d at 1218-19. Rather, at issue were a Title VII claim and a simple negligence claim against a hospital where the theory of vicarious liability had been stripped out at the summary judgment stage. *Id.* at 1212-13, 1220-21. The plaintiff in *Wilson* did not allege any claims that put the adequacy of a workplace investigation at center stage, nor apparently did the plaintiff argue that it was. Thus, with the adequacy of the workplace investigation bearing only marginal relevance to the claims before the jury, the Tenth Circuit affirmed the exclusion of expert testimony **not** of industry standards or the adequacy of an investigation, but rather the "Hospital's response plan in cases of sexual harassment, and the reasonableness of the Hospital's response to Ms. Wilson's claim." *Id.* at 1219.

Defendants also cite to *EEOC v. Glob. Horizons, Inc.*, No. CV-11-3045-EFS, 2014 U.S. Dist. LEXIS 65762 (WL 11429301) (E.D. Wash. Apr. 9, 2014), proclaiming that that court found "Mr. Robbins' opinions and testimony regarding industry anti-discrimination policies and the defendants' failure to abide by such policies irrelevant and unduly prejudicial." Dkt. 369-1 at 16:19-22. As is consistent with the hyperbole throughout their

brief, this is far from the truth. In reality, the plaintiff in *Glob. Horizons, Inc.* proffered Mr. Robbins' testimony expecting the defendant to raise the *Faragher/Ellerth* affirmative Title VII defense. *Id.* at *8-11. This defense "has two elements: 1) the employer exercised reasonable care to prevent and correct promptly any discrimination, and 2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at *7-8. When the defendant failed to raise this defense, Mr. Robbins' expert opinion naturally lost its relevance to the case. "Yet," the court cautioned, "if the Grower Defendants choose to defend against an award of punitive damages on the basis that they complied with Title VII requirements in good faith, the EEOC may admit Mr. Robbins' opinions." *Id.* at *10. Again, in this case Mr. Robbins' testimony serves to assist the jury in its quest to determine the answer to a complex question of utmost importance going to the heart of Plaintiff's claims: Were Defendants' "investigations" "reasonable steps"—considered against the backdrop of prevailing standard workplace investigative practices—to prevent harassment, discrimination, or retaliation? Mr. Robbins cannot answer this question for them, but he *can* help them understand what standard practices for such investigations are.

Not only has Mr. Robbins' testimony routinely been contracted by plaintiffs and defendants alike and admitted at trial for this purpose (*see*, *e.g.*, *Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d at 1134; *Shank*, 2015 Cal. App. Unpub. LEXIS 310, at *39-41 (WL 176628)) but workplace investigation experts are exceedingly common in cases where the adequacy of an investigation is squarely at issue. For instance, in *Randall v. Smith's Food & Drug Ctrs., Inc.*, No. 05-CV-139-J, 2006 U.S. Dist. LEXIS 97168, at *4 (WL 5176245) (D. Wyo. Mar. 23, 2006), the plaintiff designated Kent Perkins, "managing partner and licensed executive investigator for the investigative firm of Diversified Risk Management" who "has been conducting employment-based investigations for over twenty five years" to opine on "(1) effective employer investigations of employee complaints as well as signs leading an employer to take such action; (2) the effectiveness of preventative training and/or remedial measures used by Smith's relating to sexual harassment and

discrimination; and (3) the effectiveness of Smith's investigation." *Randall*, 2006 U.S. Dist. LEXIS 97168, at *3 (WL 5176245). The Court admitted such testimony because "[w]hile a juror can easily comprehend the severity or pervasiveness of workplace harassment, that juror is far less familiar with intricate employer preventative and investigative practices and might benefit from testimony regarding the efficacy of an employer's policies and procedures to investigate employee misconduct and prevent sexual harassment." *Id.* at *6-7. The Court also found that Mr. Perkins' testimony was also "relevant to the issue of pretext" and "to potential affirmative defenses to Ms. Randall's hostile work environment claim." *Id.* at *7. *See also Dickson v. Bosworth Co.*, No. MO:21-CV-009-DC, 2022 U.S. Dist. LEXIS 86711, at *12 (WL 1523490) (W.D. Tex. May 13, 2022) ("Mr. Lea may testify as to Bosworth's policies, procedures, and practices, and training received by employees at Bosworth as compared to prevailing standards or best practices."). *Accord Davis,* 927 F.2d at 1484-1485 and *Donahoe*, 2013 U.S. Dist. LEXIS 203547, at *13-14 (WL 12419625) (admitting expert testimony on the adequacy of investigation and training of police); *Mueller*, 2021 U.S. Dist. LEXIS 163044, at *16 (WL 3754582) (N.D. Ga. June 14, 2021) (permitting workplace investigations expert to testify regarding industry standards for workplace investigations, based on her personal experience and AWI Guiding Principles). There can be no dispute that Mr. Robbins' opinion will assist the jury on the complex question presented to it.

**E.    The Strong Probative Value of Mr. Robbins' Opinions is not Substantially Outweighed by a Danger of Unfair Prejudice, Confusion, or Misleading the Jury**

Having failed to successfully challenge Mr. Robbins' expert opinions under the standards set forth in Fed. R. Evid. 702 and *Daubert*, Defendants conclude their motion with a boilerplate, catch-all argument that because Mr. Robbins has a law degree and his opinions are adverse to their case, the opinions should be held inadmissible under Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy to be used sparingly." *Manion v. Ameri-Can Freight Sys.*, No. CV-17-03262-PHX-DWL, 2019 U.S. Dist. LEXIS 132858, at *4 (WL 3718951) (D. Ariz. Aug. 7, 2019) (citation omitted).

1    Plaintiff does not dispute that Mr. Robbins' opinions are prejudicial to Defendants'
2    case. But because it is directly relevant to Plaintiff's claims, it is highly probative, thus any
3    prejudice is not "unfair" and does not support the exclusion of this evidence under Rule
4    403. *Sugar Ass'n v. McNeil-PPC, Inc.*, No. CV 04- 10077 DSF (RZx), 2008 U.S. Dist.
5    LEXIS 89487, at *3 (WL 4755611) (C.D. Cal. Jan. 7, 2008) ("'That evidence may
6    decimate an opponent's case is no ground for its exclusion under [Rule] 403. The rule
7    excludes only evidence where the prejudice is "unfair"—that is, based on something other
8    than its persuasive weight.'"). "Unfair prejudice is the tendency 'to suggest decision on an
9    improper basis, commonly … an emotional one.'" *A.D. v. Cal. Highway Patrol*, No. C 07-
10   5483 SI, 2009 U.S. Dist. LEXIS 21194, at *10 (WL 733872) (N.D. Cal. Mar. 17, 2009)
11   (quoting *United States v. W.R. Grace*, 504 F.3d 745, 759 n.6 (9th Cir. 2007)). "'That
12   evidence may decimate an opponent's case is no ground for its exclusion under [Rule] 403.
13   The rule excludes only evidence where the prejudice is "unfair"—that is, based on
14   something other than its persuasive weight.'" *Manion*, 2019 U.S. Dist. LEXIS 132858, at
15   *4 (WL 3718951) (quoting *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir.
16   2003)); *see also United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant
17   evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing
18   probative value, which permits exclusion of relevant matter under Rule 403. Unless trials
19   are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the
20   application of Rule 403 must be cautious and sparing. Its major function is limited to
21   excluding matter of scant or cumulative probative force, dragged in by the heels for the
22   sake of its prejudicial effect."). Any alleged prejudice does not substantially outweigh the
23   probative value of Mr. Robbins' testimony. *Sugar*, 2008 U.S. Dist. LEXIS 89487, at *2-3
24   (WL 4755611) ("[T]he danger of prejudice must not merely outweigh the probative value
25   of the evidence, but *substantially* outweigh it). "[I]t seems unlikely that a jury of adults
26   would be inflamed to the point of irrationality by the presentation of evidence" regarding
27   standard practices in corporate HR investigations. *Manion*, 2019 U.S. Dist. LEXIS 132858,
28   at *4 (WL 3718951).

Defendants cannot use Rule 403 to exclude an expert's opinions just because they disagree with the expert or the expert's opinions are unfavorable to their position. *See Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006) ("The mere fact that two experts disagree is not grounds for excluding one's testimony."). Defendants will be able to cross-examine Mr. Robbins at trial and Defendants had the opportunity introduce a rebuttal expert to examine Mr. Robbins' methodology. That they chose instead to contract Mr. Knee, whose opinion is not a rebuttal at all and should be excluded (*see* Dkt. 349) is their fault and theirs alone and bears not upon whether *Mr. Robbins*' testimony would be unduly prejudicial.

Defendants' citations to *Walker v. Contra Costa Cty.*, Nos. C03-3723 TEH, C05-2800 TEH, 2006 U.S. Dist. LEXIS 86339, at *15 (WL 3371438) (N.D. Cal. Nov. 21, 2006) and *Specht*, 853 F.2d at 808–809 do nothing to alter this. Regarding *Walker*, Defendants posit that that court held "opinion on central issue could unduly prejudice defendants." Dkt. 369-1 at 17:11-12. It squarely does not, as "Fed. R. Evid. 704 allows expert witnesses to express an opinion on an ultimate issue to be decided by the jury." *Davis*, 972 F.2d at 1485. In reality, *Walker* is just another one of the many cases cited by Defendants for the unremarkable proposition that "expert testimony on motive in discrimination cases is inappropriate" and having found that such testimony was at issue, the court simply ruled that the expert's opinion "would add little or nothing of probative value, [so] her opinion on a central issue in this case could unduly prejudice the defendants." 2006 U.S. Dist. LEXIS 86339, at *15 (WL 3371438). Once again, Mr. Robbins does not offer any opinion as to motive. Lastly, in their citation to *Specht*, Defendants present the novel argument that Mr. Robbins' law degree renders his testimony unduly prejudicial. But the Court's ruling in that case hinged on nothing of the sort, rather, the Court found the expert's testimony prejudicial because he

> painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. He told the jury that warrantless searches are unlawful, that defendants committed a warrantless search on plaintiffs' property, and that the only applicable exception to the warrant requirement, search by consent,

should not vindicate the defendants because no authorized person voluntarily consented to allow a search of the premises. He also stated that the acts of the private individual could be imputed to the accompanying police officer to constitute sufficient "state action" for a § 1983 claim.

853 F.2d at 808. Thus, the Court concluded, "By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law." *Id.* As discussed in Section IV.A, *supra*, Mr. Robbins' expert opinions and intended testimony do nothing of the sort.

Defendants' Rule 403 argument is a regurgitation of their arguments regarding Daubert and Rules 702 and 703, *i.e.*, that the prejudice is only "unfair" because they wrongly believe Mr. Robbins' testimony should be excluded. But as Plaintiff has demonstrated, Mr. Robbins' opinions are relevant, highly probative, and clearly satisfy the requirements of *Daubert* and Federal Rules 702 and 703.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to exclude the opinions and testimony of Plaintiff's expert Michael Robbins.

Dated: September 2, 2022                Respectfully Submitted,
                                        SCOTT WAGNER AND ASSOCIATES
                                        ROBERT D. NEWMAN, ATTORNEY AT LAW
                                        HADSELL STORMER RENICK & DAI LLP


                                        By:   /s/ Hanna Chandoo
                                              Dan Stormer
                                              Barbara Enloe Hadsell
                                              Brian Olney
                                              Tanya Sukhija-Cohen
                                              Hanna Chandoo
                                        Attorneys for Plaintiff
                                        MARIA L. ZUCCHELLA